FRYMIER, ADMINISTRATOR *v.* BUTLER.

[No. 16,529. Filed March 4, 1942.]

· *Mountz & Mountz,* of Garrett, *Albert Ewbank,* of Fort Wayne, and *Charles W. Hahn,* of South Bend, for appellant.

*Parker, Crabill, Crumpacker, May, Carlisle & Beamer,* of South Bend, for appellee.

CURTIS, J.—This was an action to recover damages for the alleged wrongful death of Edgar L. Frymier, deceased, by the administrator of his estate for the benefit of the widow and children of the deceased. He was fatally injured while riding in an automobile driven by the appellee. The complaint was in two paragraphs. The first paragraph alleges that the appellee drove said automobile at an unlawful rate of speed causing the injuries, and the second charges him both with having driven said automobile at such unlawful speed and with having driven on the wrong side of the highway at the time of the accident.

To the complaint, the appellee filed an answer in three paragraphs, the first paragraph alleging that as to certain allegations of negligence the cause of action accrued more than two (2) years prior to the commencement of this action. The second paragraph of answer is a general denial; and the third paragraph alleged, that after the death of the decedent the plaintiff had made a settlement with one Glade Rallihan, driver of the automobile which collided with the one in which the

decedent was riding, and that said settlement was for the sum of $2,750.00, and made under a covenant not to sue, and alleging that said amount should be deducted from the liability, if any, of the defendant.

At the time of the accidental death of the deceased, the appellee was driving him and other members of the Albion, Indiana, K. of P. Basketball Team to their homes from Fremont, Indiana, where a game had been played by such team. The regular manager of the team had engaged the deceased to go with the team on the night in question and to act as its manager. The accident occurred sometime after midnight, and snow had previously fallen to such an extent that it had been necessary to scrape it from the highways. Some packed and slippery snow remained on the pavement and on the berms of the road. There was also snow banked on the berms. Frost covered the windshield of the appellee's car, and one member of the team who sat in the front seat was kept busy "swiping the glass with an alcohol rag," so that the driver could see ahead. The accident was due to a collision with another car causing a subsequent collision with a tree and seriously injuring some of the other passengers as well as the decedent. He died a few hours after the injury. At the close of the appellant's evidence, the court sustained the motion of the appellee for a directed verdict; and in accordance therewith, the court submitted to the jury a peremptory instruction for a directed verdict. In compliance with this instruction, the jury returned a verdict for the appellee. Upon this verdict, a judgment was later rendered in accordance therewith. There was a motion for new trial filed and overruled, and this appeal has been prosecuted from said final judgment.

The error assigned and relied upon for reversal is the action of the trial court in overruling the motion for

new trial. The causes in the motion for new trial that are relied upon by the appellant are: That the court erred in sustaining the motion of the defendant to return a verdict in his favor; that the court erred in instructing the jury to return a verdict for the defendant, and that the court erred in giving to the jury, at the request of the defendant, the said peremptory instruction. The appellant asserts that there is but one question presented, and that the said causes in the motion for new trial present but one question, to wit, the alleged error in giving the said peremptory instruction.

The record as it originally came before us has been supplemented by the return to the writ of *certiorari* issued by this court. The appellee still points out what he considers seeming deficiencies and contradictions in the record, particularly as to whether or not the bill of exceptions containing the evidence is in the record. Since we are required to indulge all reasonable intendments and presumptions in favor of the record, we have concluded that it presents a sufficient basis upon which to present the errors relied upon by the appellant, treating the said bill of exceptions as properly in the record.

There is no difference of opinion between the appellant and appellee upon the proposition that a peremptory instruction to a jury to return a verdict for the defendant can properly be given by the trial court only if there is a total absence of any competent evidence or inferences from such evidence to sustain an essential element of the plaintiff's case. This being true, there is no occasion to cite a long line of authorities to that effect.

The question before us, therefore, is whether or not there is any competent evidence or legitimate inferences

that could be drawn from 'such evidence that would have sustained a verdict for the plaintiff in the case had the case been submitted to the jury. It is the appellee's contention that the complaint charges liability as a carrier for hire, and does not charge the appellee with liability under the guest statute. The evidence shows that there was a K of P Lodge in the Town of Albion, and that the deceased was a member of the basketball team known as the Albion Knights of Pythias Basketball Team, and that the lodge provided the team with equipment and transportation to and from games in neighboring cities. The evidence further shows that nothing was paid to the owners of automobiles who transported the players to and from games, but that the members of the basketball team and the manager of the team took turns in using their automobiles for such purpose. Sometimes the lodge paid for the gas and oil used and sometimes the players on the team contributed to meet these items of expense. The lodge itself furnished the team with two basketballs. There is no evidence whatever as to whether or not on the particular night there was any contribution from the decedent or any member of the team or any other person to pay for gas or .oil. The deceased had not played basketball with the team for some time due to an injury to his hand, but on the afternoon in question, knowing of the game to be played at Fremont, Indiana, asked the appellee if he could ride over to the game that evening in the appellee's car. This request was granted. The former manager of the team did not attend this game, but asked the deceased to go to the game and represent him in whatever management was necessary. This management consisted sometimes of small collections of gate or door receipts and the like. There was a total lack and failure of any evidence to

show that the appellee received anything of value from the deceased, or was promised or expected to receive anything of value, for the permission he gave to the deceased to ride in his car to and from the game. If the appellee is correct in his contention that the complaint relies upon a carrying-for-hire of the deceased by the appellee, and if that is an essential element for the appellant to have proven, then clearly the action of the trial court in directing a verdict was correct. As we view the record, it sustains the appellee's contention. In a somewhat similar case, *Lutvin* v. *Dopkus* (1920), 94 N. J. L. 64, 65, 108 A. 862, 863, the court said:

> "The conceded fact is that they solicited defendant as brother members of the organization, for the use of his automobile to take them to the picnic grounds and return.
>
> "The act of the defendant in acceding to their request possessed none of the elements of a contract, and involved no element of invitation which can bring it within the rule of law applicable to a passenger upon a railway train or a hired bus . . .
>
> "The legal status of the plaintiffs here exhibited is that of licensees to whom the only legal obligation imposed is that of refraining from the perpetration of acts wantonly or wilfully injurious."

In *McCann* v. *Hoffman* (1937), 9 Cal. (2d) 279, 285, 70 P. (2d) 909, 912, the court said:

> "The great weight of authority is to the effect that the sharing of the cost of gasoline and oil consumed on a trip, when that trip is taken for pleasure or for social purposes, is nothing more than the exchange of social amenities and does not transform into a passenger one who without such exchange would be a guest, and consequently is not payment for the transportation or compensation within the meaning of the statute. It is obvious that if a different result obtained under any con-

struction of the statute its purposes would be defeated and its effect annulled. The relationships which will give use to the status of a passenger must confer a benefit of a tangible nature and are limited."

And again, in *Starkweather* v. *Hession* (1937), 23 Cal. A. (2d) 336, 338, 73 P. (2d) 247, 248, the court said:

" '. . . Where a special tangible benefit to the defendant was the motivating influence for furnishing the transportation, compensation may be said to have been given. But it is not given where the ·main purpose of the trip is the joint pleasure of the participants. The payment of a portion of the expense, as for gasoline and oil consumed on the trip, is merely incidental and does not constitute the moving influence for the transportation.' "

Under the evidence, the basketball playing was for the pleasure of the team and to keep the name of the lodge before the public. The players were paid nothing and promised nothing. The K of P Lodge donated two balls and nothing more. If the boys made expenses, they paid their own gas bills. Each boy furnished his own suit and equipment and simply played for the fun of it.

There is no allegation that the injury to the deceased was intentional on the part of appellee, or that appellee drove his car with reckless disregard for the rights of others. Only the liability of a carrier for hire is alleged and the proof falls far short of making a case for the jury on that point. It must be further remembered that there was no attempt in the evidence to make a case under the so-called guest statute. We have examined the evidence carefully and have concluded that the trial court was correct in its ruling, and that the peremptory instruction was properly given.

There being no reversible error shown, the judgment of the trial court is affirmed.

NOTE.—Reported in 39 N. E. (2d) 809.