SWINNEY *v.* ROLER.

[No. 16,958.  Filed April 3, 1943.  Rehearing denied April 30, 1943.  Transfer denied May 20, 1943.]

*Arthur & Tuberty,* of Logansport, *Elliott & Fell,* of Kokomo, and *Horner, McDowell & Gast,* of Winamac, for appellant.

*Hillis & Hillis,* of Logansport, *James A. Dilts,* of Winamac, and *McClure & Shenk,* of Kokomo, for appellee.

FLANAGAN, P. J.—This is an action for personal injuries in which appellee alleges that he was injured while a guest in an automobile driven by appellant.

To appellee's amended complaint, appellant filed his answer in general denial. The verdict of the jury was for appellee in the sum of $2,800.

Errors relied upon for reversal are: (1) Overruling appellant's motion for a new trial; and (2) overruling appellant's motion for judgment on the interrogatories notwithstanding the verdict.

The specifications of the motion for a new trial summarized are: (1) The verdict is not sustained by sufficient evidence, and (2) is contrary to law; (3) the court erred in overruling appellant's motion for a directed verdict; and (4) the court erred in the giving and refusing of certain instructions.

The first three above specifications of the motion for a new trial challenge the sufficiency of the evidence to show, (a) that appellee was a guest under the guest statute (§ 47-1021, Burns' 1940 Replacement, § 11265, Baldwin's 1934), and (b) that appellant was guilty of either wanton or willful misconduct.

The guest statute above referred to reads as follows:

> "The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle."

Our Supreme Court has defined the word "guest" as used in the former and similar statute (Acts 1929, ch. 201, § 1, p. 679) as follows:

"The word 'guest' has more of social than business significance. The words 'without payment for such transportation' imply some valuable consideration for the ride. The presence of the person injured must have directly compensated the owner or operator in a substantial and material way. If the trip is primarily social, incidental benefits though monetary do not exclude the guest relationship. If the trip is primarily for business purposes and the one to be charged receives substantial benefit, though not payment in a strict sense, the guest relationship does not exist. Expectation of a material gain rather than social companionship must have motivated the owner or operator in inviting or permitting the other person to ride. The following extract from the dissenting opinion in *Scholz v. Leuer* (1941), 7 Wash. (2d) 76, 95, 109 P. (2d) 294, 303, elaborates the thought:

'As indicated in the opinion of the majority, the mere rendition of benefits by a passenger is, of itself, insufficient to take one out of the "guest" classification if the benefits are merely "incidental to hospitality, companionship, or the like." In resolving the question of benefits and the direction in which they flow, as well as their character and significance, a factor to be taken into consideration is the intention of the parties in entering upon the undertaking. If their actual and mutual purpose be to enter into a relationship *other* than that of host and guest, and their subsequent acts are not inconsistent with the intended relationship, the mere fact that, in the performance of the undertaking, the one party does nothing more than what a guest normally would do, will not convert the relationship into one of host and guest.

'On the other hand, where the intended relationship is that of host and guest, the mere fact that benefits have been conferred upon the host will not change his legal status nor

that of his guest. Thus, the motives which actuate the parties concerned constitute a primary consideration. Accordingly, when the "benefit" rule is invoked, the transportation must have found its impulse in some mutual understanding from which the carrier has the right to obtain, or expect, some material benefit to himself.'

"We do not consider the mere possibility of benefit sufficient to exclude the guest relationship. Some courts have said it must be 'tangible and direct.' The words imply reality, not potentiality. Courts should not be required to search for a benefit. If it is not apparent then it can hardly be said to be substantial or material." *Liberty Mutual Ins. Co.* v. *Stitzle* (1942), 220 Ind. 180, 185, 186, 41 N. E. (2d) 133, 135.

The evidence is that appellant and appellee, on the day of the accident, rode in appellant's automobile from Sharpsville to West Middleton for the sole purpose of playing a game of roque. They were returning to their homes at the time of the accident. The purpose of the trip was entirely social and appellee was clearly a guest within the above definition.

Willful or wanton misconduct consists of the conscious and intentional doing of a wrongful act or omission of a duty, with reckless indifference to consequences, under circumstances which show that the doer has knowledge of existing conditions and that injury will probably result. Knowledge of existing conditions may be obtained through the senses of the doer or from information conveyed to him in the nature of warning by others. Neither ill-will nor deliberate attempt to injure are essential elements. *Bedwell* v. *Debolt* (1943), 222 Ind. —, 50 N. E. (2d) 875.

The collision occurred on October 23, 1939, about five

o'clock p. m. It was daylight, the weather was clear, and the highways dry. The car which appellant was driving and in which appellee was riding was proceeding east on the Park Road in Howard County, Indiana, approaching the point where it is intersected by the Alto Road. One Alva Conwell was driving the other car involved in the collision and was proceeding south on the Alto Road toward the intersection. The Park, Road was paved with black top at and in both directions from the intersection. The Alto Road was so paved north of the intersection only. There are no obstructions at the northwest corner of the intersection for 220 yards west on the Park Road and for a quarter of a mile north on the Alto Road.

Appellee testified as follows:

When the car in which he was riding was about 200 yards from the intersection he saw the Conwell car and said, "There comes a car from the north." Appellant was then driving about 57 or 58 miles per hour. Appellant continued at the same speed. When they had travelled one-third to one-half the distance to the intersection appellant said, "Yeh, he's stopping." Nothing else was said prior to the collision. Appellee slid forward in his seat and looked at appellant and the Conwell car. Just before entering the intersection appellant put on his brakes and slid the car into the intersection where the Conwell car hit appellant's car in the side from the door on back. Appellee saw the Conwell car all the time from 200 yards back to the intersection but could not say whether it slowed down and then speeded up again before it reached the intersection. He thought appellant put on his brakes about 39 or 40 feet from the intersection.

Appellant testified that he was driving between 50 and 55 miles an hour; that he was busy talking to

appellee and did not see the Conwell car; and that appellee did not say, "There comes a car from the north," and he did not say, "Yeah, he's stopping."

Conwell testified that he was driving about 35 miles an hour; that he took his foot off the accelerator and looked to the west when he was about 369 feet from the intersection; that his car slowed down about 10 miles; that he put his foot back on the accelerator when he was about 300 feet from the intersection and was going about 25 miles an hour when the collision occurred; that he did not look west after the time when he was 369 feet from the intersection and did not see appellant's car prior to the collision.

The sheriff of Howard County testified that there were skid marks from appellant's truck from about 100 feet west of the intersection and where all four tires had slid for about 30 or 40 feet.

In considering this evidence in the light of the above definition of willful or wanton misconduct we must give credence only to that evidence most favorable to appellee. So considering it we must conclude that appellant had knowledge of the approach of the Conwell car but nevertheless continued at a high rate of speed toward the intersection until he was too close to avoid a collision. But did he so proceed "with reckless indifference to consequences?" The evidence of appellee is that appellant did heed the warning; that he looked at the Conwell car, observed its movement and concluded that it was stopping. No other inference can be drawn from his statement, "Yeah, he's stopping." That his conclusion was incorrect is apparent. He made a mistake of judgment which might support a charge of negligence but not one of wanton or willful misconduct. The situation was evidently one where such a mistake of judgment was possible for appellee

seems to have made the same mistake. For though he saw the Conwell car at all times he made no observation concerning an approaching hazard from the time appellant's car was 200 yards from the intersection until the collision occurred. Conwell testified that he did slow down and then speed up. There is no evidence that appellant proceeded with knowledge that injury would probably result. We must conclude that the evidence most favorable to appellee is not sufficient to submit to the jury the question as to whether appellant was guilty of wanton or willful misconduct.

In view of this conclusion and the fact that other questions presented will not likely arise on another trial it is not necessary to consider them. We have attempted to give a complete and sufficient definition of wanton or willful misconduct so that there will be no difficulty in instructing the jury on that subject.

Judgment reversed with instructions to sustain appellant's motion for a new trial and for further proceedings consistent with this opinion.

Blessing, C. J., not participating.

NOTE.—Reported in 47 N. E. (2d) 846.