ALBERT McGANN SECURITIES COMPANY, INC. *v.* COEN.

[No. 16,886. Filed April 28, 1943. Rehearing denied May 22, 1943. Transfer denied October 19, 1943.]

*Seebirt, Oare & Deahl, Robert L. Oare, William T. Oare,* all of South Bend, and *George L. Pepple,* of Goshen, for appellant.

*Jones, Obenchain & Butler,* of South Bend, for appellee.

FLANAGAN, P. J.—This action was brought by appellee, Delos M. Coen, against appellant, Albert McGann Securities Company, Inc., for personal injuries received by appellee as a result of an automobile collision while appellee was riding in an automobile owned by appellant and driven by one Donald Dunning, vice president of appellant corporation.

To the first three paragraphs of appellee's amended complaint a demurrer was sustained and this ruling of the trial court has been challenged here by cross-errors duly assigned by appellee.

To the fourth paragraph of the amended complaint appellant answered in general denial. Trial before a jury resulted in a verdict for appellee in the sum of $4,500. Motion for a new trial was filed and overruled and judgment entered on the verdict. The sole error relied upon for reversal is the overruling of appellant's motion for a new trial.

The first proposition presented by appellant is that the evidence is not sufficient to establish that the driver of appellant's automobile was acting within the scope of agency in inviting appellee as guest.

On this question there is the following evidence:

Appellant had its principal office in South Bend, Indiana, where it engaged in the securities business. Albert McGann was its president, treasurer and general manager. Donald Dunning was its vice president and had duties as sales representative and statistician. Leon L. Matthews was vice president of the American Trust Company, a South Bend bank. Delos M. Coen, appellee herein, was cashier, treasurer and assistant trust officer of the Merchants National Bank of South Bend. Roland W. Goheen was vice president of the City National Bank & Trust Company of South Bend. Appellant did business with various persons including the South Bend

banks. A representative of appellant company usually attended bankers' conventions in the state of Indiana. Frequently Dunning attended as his company's representative and when he did the company paid his expenses.

In May, 1937, a state bankers' convention was held in the City of Indianapolis. The three bankers above named were going to leave South Bend for the convention at Indianapolis on the morning of May 5, 1937. Appellee had arranged to ride in the automobile of Goheen. Appellant company owned three automobiles, a Packard two-door sedan and two Plymouth coupes. McGann carried the keys to the sedan. On the morning of May 5, 1937, McGann brought the sedan to the company's office. From the company office and in the presence of McGann, Dunning telephoned Goheen and talked to him in reference to arrangements to go to Indianapolis. The details of the conversation which took place are not disclosed by the evidence. At about eleven o'clock a. m., the prearranged time between Goheen and appellee for starting, Goheen telephoned appellee and told him that Dunning had called him (Goheen) and asked him to ride with Dunning in McGann's car; that he had informed Dunning of his arrangement with appellee and that he would therefore have to call appellee to see if appellee would go that way. Appellee consented and within five minutes Dunning, Matthews and Goheen picked up appellee in front of appellee's bank and they were on their way. Matthews and Goheen were riding in the back seat and appellee rode in the front seat with Dunning, who was driving. Dunning was driving the Packard sedan belonging to appellant company and had driven it from appellant's office.

From the above evidence we think the jury could conclude that the larger automobile was turned over

to Dunning by the general manager of appellant company for the purpose of taking other persons to the convention; that the arrangements were made in the offices of appellant company in the presence of the general manager and with his knowledge, consent and authorization; and that Dunning was acting in the scope of his agency in inviting appellee as guest.

We do not decide whether appellant would be liable for the wanton or wilful misconduct of Dunning if he were acting within the scope of his authority in driving the car to Indianapolis, but outside the scope of his authority in inviting appellee to ride along.

The next proposition presented by appellant is that the evidence discloses that appellee incurred the risk. It is contended by appellee that this question is not presented because the defense is not pleaded by special answer. It is not necessary however that we determine the question as to whether the defense of incurring the risk must be specially pleaded for we find no evidence supporting such defense.

The next proposition presented by appellant is that the evidence is not sufficient to establish reckless disregard on the part of the driver of appellant's automobile. The applicable statute reads as follows:

> "That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator, for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of such owner or operator or caused by his reckless disregard of the rights of others."

Acts 1929, ch. 201, § 1, p. 679, subsequently amended in Acts 1937, ch. 259, § 1, p. 1229.

The words "reckless disregard for the rights of others" as used in the above act have been defined to mean, "when the owner or operator of an automobile voluntarily does an improper or wrongful act, or with knowledge of the existing conditions voluntarily refrains from doing a proper or prudent act, under such circumstances when his action, or his failure to act, evinces an entire abandonment of any care, and a heedless indifference to results which may follow, and he recklessly takes the chance of an accident happening without intent that any occur." *Coconower* v. *Stoddard* (1933), 96 Ind. App. 287, 296, 182 N. E. 466, 470.

On the question presented, the evidence most favorable to appellee is as follows:

The automobile driven by Dunning proceeded from South Bend to Logansport where the party stopped for lunch, and then south on road 29 toward Indianapolis to a point where road 28 enters road 29 to form a "T" intersection. At the place of the intersection and for a distance of at least a half mile in each direction the road was straight and level. At the southwest corner of the intersection was a flange, the size of which is not shown by the evidence, which connected the two roads. The day was clear and the road dry. Dunning had been driving from 70 to 80 miles per hour throughout the trip and before approaching the intersection had been driving about 70 miles per hour. While the speed he drove had been discussed in connection with the performance of the automobile, no occupant of the car had made any protest or even suggested that the speed was too fast. At the time of, and before the accident, appellee was turned toward the rear seat engaged in conversation with its occupants and did not see the accident or the other car before the

accident. Matthews first saw the other car when they were within 50 or 60 feet of it. Goheen observed the other car approaching from the south about a quarter of a mile and then was not sure what he observed from that time until it loomed up right in front fifteen or twenty feet ahead. The other car involved in the accident was a Plymouth which was approaching from the south and which turned into the west side of the road south of the intersection. When the Plymouth pulled into the west side of the highway Dunning applied the brakes and skidded 40 or 50 feet before striking the other car practically head-on and in the west side of the highway. The collision occurred south of the intersection. There is no evidence that the Plymouth came to the intersection and turned or that it was the purpose of its driver in entering the west side of the highway south of the intersection to eventually turn into road 28.

Considering this evidence in the light of the definition of reckless disregard for the rights of others above set forth we are unable to find any evidence to support the verdict so far as this element is concerned. The evidence shows that Dunning was driving fast on a paved highway free of traffic except the one approaching car. No traffic was at the intersection or would reach the intersection to make a turn. Assuming that the driver of the Plymouth intended to turn on road 28, Dunning cannot be charged with reckless disregard for failing to anticipate that the other car would enter the west side of the road before reaching the regular turning place. Even though the Plymouth had reached the regular turning point Dunning could not be charged with reckless disregard for the rights of others in not anticipating that it would make the turn directly in front of a car which its driver could scarcely help see approaching. There is nothing in the evidence to sug-

gest that the collision could have been avoided if the speed of appellant's car had been much more moderate. There is here no voluntary doing of an improper or wrongful act under such circumstances that evince an entire abandonment of care and a heedless indifference to results. There is no evidence of recklessly taking the chance of an accident happening. There is no refraining from doing a proper or prudent act after knowledge of existing conditions. As soon as Dunning discovered that the Plymouth was entering the wrong side of the road he did what he could to avoid the accident.

Other questions presented by appellant are not likely to arise on another trial and it is not necessary that we consider them.

We proceed to consider the assigned cross-errors.

The first paragraph of amended complaint is on the theory of negligence. It is appellant's contention that appellee was not a guest being transported without payment therefor and in support of this contention alleged in this paragraph of complaint the following facts in substance:

Appellant was buying and selling securities and dealt with the South Bend banks. The growth and success of its business depended upon the formation, cultivation and strengthening of friendly relations with customers and prospective customers, such as the South Bend banks, by the officers of appellant, including Dunning. Appellee and the others who rode with Dunning handled securities business for their respective banks. The formation, cultivation and strengthening of business connections and personal friendships with the officers of financial institutions were done in anticipation and hope of new and additional business transactions and consequent profit and in the reasonable expectation

that pecuniary benefit would be derived therefrom by appellant. Part of the duties of Dunning was the promotion of business connections and personal friendships with officers of financial institutions by attending bankers' conventions with them and transporting them to and from such conventions. Appellant directed McGann and Dunning to attend the bankers' convention which was held in Indianapolis in May, 1937. McGann could not go at the time the others planned to leave and directed and ordered Dunning to proceed to the convention and to use appellant's Packard sedan for that purpose. Dunning thereupon determined to and did offer to transport appellee and the other two bankers to and from the convention, which offer they accepted.

The word "guest" as used in the statute here involved has been defined by our Supreme Court as follows:

"The word 'guest' has more of social than business significance. The words 'without payment for such transportation' imply some valuable consideration for the ride. The presence of the person injured must have directly compensated the owner or operator in a substantial and material way. If the trip is primarily social, incidental benefits though monetary do not exclude the guest relationship. If the trip is primarily for business purposes and the one to be charged receives substantial benefit, though not payment in a strict sense, the guest relationship does not exist. Expectation of a material gain rather than social companionship must have motivated the owner or operator in inviting or permitting the other person to ride. The following extract from the dissenting opinion in *Scholz* v. *Leuer*, 1941, 7 Wash. (2d) 76, 95, 109 P. (2d) 294, 303, elaborates the thought:

'As indicated in the opinion of the majority, the mere rendition of benefits by a passenger is, of itself, insufficient to take one out of the "guest" classification if the benefits are merely "incidental to hospitality, companionship, or

the like." In resolving the question of benefits and the direction in which they flow, as well as their character and significance, a factor to be taken into consideration is the intention of the parties in entering upon the undertaking. If their actual and mutual purpose be to enter into a relationship *other* than that of host and guest, and their subsequent acts are not inconsistent with the intended relationship, the mere fact that in the performance of the undertaking, the one party does nothing more than what a guest normally would do, will not convert the relationship into one of host and guest.

'On the other hand, where the intended relationship *is* that of host and guest, the mere fact that benefits have been conferred upon the host will not change his legal status nor that of his guest. Thus, the motives which actuate the parties concerned constitute a primary consideration. Accordingly, when the "benefit" rule is invoked, the transportation must have found its impulse in some mutual understanding from which the carrier has the right to obtain, or expect, some material benefit to himself.'

"We do not consider the mere possibility of benefit sufficient to exclude the guest relationship. Some courts have said it must be 'tangible and direct.' The words imply reality, not potentiality. Courts should not be required to search for a benefit. If it is not apparent then it can hardly be said to be substantial or material." *Liberty Mutual Ins. Co.* v. *Stitzle* (1942), 220 Ind. 180, 185, 41 N. E. (2d) 133, 135.

When the first paragraph of the amended complaint is examined in the light of the above definition, it appears clearly that no facts are alleged which remove appellee from the operation of the guest statute. Nothing more than the mere possibility of benefit to appellant is alleged and that is not sufficient.

The second paragraph of amended complaint alleges in addition to what is alleged in the first paragraph, that appellee, Goheen and Matthews mutually agreed with Dunning that they would reimburse him for their proportionate shares of the expense of oil and gasoline consumed on the trip.

The third paragraph of amended complaint alleges, in addition to what is alleged in the first paragraph, that for many years prior to May 7, 1937, it was the common usage and ordinary practice among the bankers and others attending bankers' conventions from South Bend to travel in groups in automobiles and for those riding in each automobile to share the expense of gasoline and oil consumed and pay the owner of the car used their proportionate share of the traveling expense, with which custom and usage the officers of appellant, including Dunning, were at all times acquainted.

We do not understand that the sharing of the expense of gasoline and oil by guests constitutes payment for transportation under our guest statute. We think the following language of the Supreme Court of California, used in construing a similar statute, correctly states the law:

"The great weight of authority is to the effect that the sharing of the cost of gasoline and oil consumed on a trip, where that trip is taken for pleasure or social purposes, is nothing more than the exchange of social amenities and does not transform into a passenger one who without such exchange would be a guest, and consequently is not payment for transportation or compensation within the meaning of the statute. It is obvious that if a different result is obtained under any construction of the statute its purposes would be defeated and its effect annuled."

*McCann* v. *Hoffman,* 9 Cal. (2d) 279 (1937), 70 P. (2d) 909. ·See also· *Voelkl* v. *Latin,* 58 Ohio App. 245 (Ohio 1938), 16 N. E. (2d) 519.

The demurrers to appellant's paragraphs of amended complaint numbered 1, 2 and 3 were properly sustained.

Judgment reversed with instructions to sustain appellant's motion for a new trial and for further proceedings consistent with this opinion.

NOTE.—Reported in 48 N. E. (2d) 58.

DISSENTING OPINION ON PETITION FOR REHEARING.

ROYSE, C. J.—I am in complete accord with the majority opinion (48 N. E. (2d) 58) on the questions presented by appellant's assignment of error. However, on a reconsideration of the authorities on the questions presented by the ·cross-errors assigned by appellee, I believe the majority opinion is not only against the weight of authority generally, but is in direct conflict with two recent decisions of our Supreme Court.

The term "guest," as used in Acts 1929, ch. 201, § 1, p. 679, amended by Acts 1937, ch. 259, § 1, p. 1229, § 47-1021, Burns' 1940 Replacement, has a narrow legal significance. *Long* v. *Archer* (1943), 221 Ind. 186; 46 N. E. (2d) 818, 822.

The ruling of our Supreme Court above referred to is in conformity with the long line of authority which holds that acts in derogation of the common law are to be strictly construed. *Selvage* v. *Talbott* (1911), 175 Ind. 648, 95 N. E. 114; *Helms et al.* v. *American Security Co. of Indiana, Inc.* (1939), 216 Ind. 1, 22 N. E. (2d) 822; *Ashbaucher* v. *Price* (1925), 83 Ind. App. 604, 145 N. E. 775; *Concrete Steel Company* v. *Metropolitan Casualty Insurance Company of New York* (1933), 95 Ind. App. 649, 659; 173 N. E. 651.

The majority opinion cites the case of *Liberty Mutual Ins. Co.* v. *Stitzle* (1942), 220 Ind. 180, 185, 41 N. E. (2d) 133, 135. This case appears to me to be in direct conflict with the majority ruling in the instant case. Judge Richman, in speaking for the Supreme Court in that case, said: "If the trip is primarily for business purposes and the one to be charged receives substantial benefit, though not payment in a strict sense, the guest relationship does not exist. Expectation of a material gain rather than social compansionship must have motivated the owner or operator in inviting or permitting the other person to ride."

Applying the rule here laid down by our Supreme Court, I feel the allegations of Paragraphs 1, 2 and 3 of the complaint (the substance of each is set out in the majority opinion) show conclusively the purpose of the trip was primarily for business purposes and that the appellant was motivated by *an expectation of material gain* when he offered to take appellee to the meeting. I am of the opinion the paragraphs of complaint here under consideration are much stronger than those under consideration in the Liberty Mutual Ins. Co. case, *supra,* where the court said at p. 188: "We conclude that on this question appellant's complaint was sufficient to permit an inquiry into all the circumstances which, when developed by the evidence, may fill in the details of the sketch before us or may paint an entirely different picture." See also, *Piercy* v. *Zeiss* (1935), 8 Cal. App. (2d) 595, 47 P. (2d) 818; *Bree* v. *Lamb* (1935), 120 Conn. 1, 178 A. 919.

I feel, therefore, the petition for rehearing should be granted and the judgment of the trial court sustaining the demurrers to the first, second and third paragraphs of complaint should be reversed.

NOTE.—Reported in 48 N. E. (2d) 1000.