ALLISON *v.* ELY ET AL.

[No. 30,032. Filed November 16, 1960. Rehearing denied January 31, 1961.]

250

*Fraser & Isham, William S. Isham* and *James A. Gardner,* all of Fowler, for appellant.

*N. George Nasser, Hansford C. Mann,* both of Terre Haute, and *Karl M. Jacobs,* of Fowler, for appellee, Charles Ely.

BOBBITT, J.—This case comes to us on petition to transfer from the Appellate Court under Acts 1933, ch. 151, §1, p. 800, being §4-215, Burns' 1946 Replacement. See: *Allison* v. *Ely* (1959), 159 N. E. 2d 717, for opinion of the Appellate Court.

It is an action for personal injuries arising out of a collision between a car driven by appellant, John Allison, and appellee, Marie Easter, wherein appellee, Charles Ely, was injured.

The case was tried in the lower court on the theory that appellee-Ely was riding in the car driven by appellant-Allison, as a fare-paying passenger.

Trial was by jury which returned a verdict of $15,500 against both appellant-Allison and appellee, Marie Easter. From the judgment on this verdict defendant-appellant, John Allison, appealed.

The determination of the principal issue raised in this case requires an interpretation of the meaning of the phrase "while being transported without payment therefor" as it appears in Acts 1937, ch. 259, §1, p. 1229, being §47-1021, Burns' 1952 Replacement.

*First:* We are, however, confronted at the outset by appellee's assertion that appellant, by the submission of three instructions (Nos. 4, 6 and 17) on mere negligence "invoked the theory that his own liability should be predicated on proof of negligence, and having asked that the jury be so instructed, he cannot complain that the jury determined his liability upon insufficient evidence that plaintiff was not a guest."

The first numerical paragraph of the complaint herein alleges, *inter alia,* that "the plaintiff, Charles Ely, was riding as a fare-paying passenger in the automobile of the defendant, John Allison." This statement clearly established the theory of the case, and it was upon this theory that it was tried.

Appellee cites *Gray* v. *Gray* (1931), 202 Ind. 485, 492, 176 N. E. 105, and *Foster* v. *Pruett* (1938), 105 Ind. App. 367, 374, 15 N. E. 2d 121, in support of his assertion that because appellant submitted instructions on negligence he thereby waived any question of the sufficiency of the evidence to establish that the plaintiff-appellee was a "paying passenger" and not a "guest" within the meaning of the Guest Statute.

In our opinion *Gray* v. *Gray, supra,* has no application to the question here presented, and *Foster* v. *Pruett, supra,* is clearly distinguished from the present case in that the instructions tendered and given in that case did, in fact, invoke a theory different from the one upon which the case was tried. That is not the situation here. Also, in the present case appellee, Marie Easter, was a co-defendant with Allison, she

being the driver of the other car which was involved in the accident. Both appellee-Easter and appellant were alleged to be guilty of negligence in certain specific particulars. All three of these instructions referred to both defendants.

The ruling in the Foster case should be limited to the facts in that case, and this court is not inclined to extend the doctrine there applied, to the giving of instructions under any and all circumstances.

Appellant also tendered his Instructions Nos. 11, 13 and 23, which were given by the court, covering liability under the Guest Statute, and under all these circumstances it could scarcely be said that appellant invoked the theory that his own liability should be predicated on proof of negligence.

The theory that appellee was not a guest of appellant was established by appellee's complaint, and it was not changed by the submission by appellant of Instructions Nos. 4, 6 and 17. We find nothing in the record which would constitute a waiver of appellant's right to raise in this court the question of the sufficiency of the evidence to sustain appellee-Ely's burden that he was a fare-paying passenger as alleged in his complaint.

*Second:* Appellant asserts that there is no evidence "from which a fair inference can be drawn to support the finding of the jury that the appellee Ely was a fare-paying passenger" and, therefore, he is not outside the scope of the Guest Statute (§47-1021, *supra*).

The burden was upon appellee-Ely to show by a preponderance of the evidence that he was a "fare-paying" passenger and not a "guest" within the meaning of the Guest Statute. *Liberty Mut. Ins. Co.* v. *Stitzle* (1942), 220 Ind. 180, 186, 41 N. E. 2d 133.

If appellee-Ely made "payment" for his transportation the Guest Statute does not apply. However, this does not mean that such payment must necessarily have been made in money. It is sufficient if his (Ely's) presence directly compensated appellant "in a substantial and material or business sense as distinguished from mere social benefit or nominal or incidental contribution to expenses" of the trip. *Scholz* v. *Leuer* (1941), 7 Wash. 2d 76, 109 P. 2d 294, 299; *Woolery* v. *Shearer* (1958), 53 Wash. 2d 156, 332 P. 2d 236, 238; *Liberty Mut. Ins. Co.* v. *Stitzle, supra* (1942), 220 Ind. 180, 185, 41 N. E. 2d 133; *Lee Brothers* v. *Jones* (1944), 114 Ind. App. 688, 698, 54 N. E. 2d 108.

An examination of the evidence most favorable to appellee discloses that some ten days before the accident in controversy Miami University had sponsored what it designated "Dad's Day" at which time the parents of students, particularly the fathers, were invited to the University for a football game and other festivities. The parents of both the appellant and appellee-Ely attended "Dad's Day" ceremonies in 1953, and met at the Sigma Nu House to which fraternity their respective sons John Allison and Charles Ely belonged. The Allisons lived in Naperville and the Elys in Downers Grove, Illinois, both towns being a few miles west of Chicago. Each set of parents had driven to Oxford in their respective automobiles. While conversing in the Fraternity House sometime during the "Dad's Day" weekend it was agreed between the Allison parents and the Ely parents and their two sons that Mr. and Mrs. Allison would go home with Mr. and Mrs. Ely in the Ely automobile, leaving the Allison car in Oxford for the use of appellant-Allison and appellee-Ely, and appellant's sister who was also attending Miami University,

as a means of transportation home for the approaching Thanksgiving holiday.

Appellant-Allison testified, on conditional examination, in pertinent part, as follows:

"Q. State whether or not at that time it was decided as an economy measure that your parents would return with Mr. Ely's parents and leave the automobile for you and Charles Ely to use to save train expenses?

"A. Yes, that is right. They decided that would be a good move so that we could go back, my sister and Chuck and Harley and Kate. I might add at this time we had no understanding with either Kate or Harley, this was an after-thought after that weekend because they did live in the area of my home town.

"Q. It was the intention of you and Mr. Ely, was it, to share the expenses of the trip?

"A. Well, there was nothing said, nothing previously, no pre-planning or figuring out amounts, no.

"Q. Would you say it was just assumed?

"A. Yes, it always has been, when you go with someone; it is not a pre-requisite.

. . . . .

"Q. Who all was present, Mr. Allison, when your parents and Mr. Ely's parents made the decision to go back in the Ely automobile and leave the, your parent's automobile there for you fellows?

"A. Both our parents and Charles and I; all I remember the ones concerned at that time.

. . . . .

"Q. Do you recall just what was said in that conversation?

"A. Well, we had, we were just sitting around, I can't recall if it was the same or some other afternoon, sometime before both the parents left, that it would be advantageous to leave the one car for transportation home, economically and time-wise, and as far as alleviating

the fighting the connections and the disadvantages of making these connections, and time and distance involved, and making sure that my sister didn't have to fight the holiday traffic and congestion on the train with her luggage, and so on.

"Q. Then if I understand the situation there correctly, that by the Elys taking your mother and father back to Naperville and leaving the automobile of your parents at Oxford, it was agreed between the six of you, that is, your parents, Ely's parents, and you and Charles Ely, that there would be a saving in both time and money in doing it in that manner?

"A. Yes, and convenience."

Appellant-Allison further testified on direct examination at the trial, in pertinent part, as follows:

"Q. While you were there what was said about the automobile situation?

"A. It was discussed by our fathers about the possibility of leaving a car so that we could have the opportunity to come home in a private car rather than the inconvenience of connections on the transportation available at that time."

Appellant-Allison further testified on cross-examination at the trial, in pertinent part, as follows:

"Q. You did make a savings, you and your Sister, by getting to go home in the automobile rather than by train, bus, taxicab, and commuter's train, didn't you?

"A. I could answer that by saying that could be a part of it, that was not the main reason for having that car there and having to go home in it. There were other reasons. One was my Sister was not well, she had mononucleosis, I think that is a common college affliction in that you get very run down, I believe the white corpuscles take over the red ones, and she had been weak and restricted in her activities. My parents did not want her fight-

ing this holiday traffic, especially on this rambling cattle train we had to take; that was one of the reasons; convenience was a reason; economy of time was another, we could get home much sooner; so expenses may be part of it but again, just a part.

"Q. In other words there were other values you considered even more than the money?

"A. Much more, much more."

Appellee-Ely testified, on direct examination, in pertinent part, as follows:

"Q. State whether or not your parents had been down some time prior to that, down to Miami University.

"A. Yes, Sir, they had been down approximately a week before at Dad's Day.

. .. . . .

"Q. Some time before your parents returned home, I mean your father and mother and Mr. Allison's father and mother, state whether or not the six of you had a conversation relative to transportation home.

"A. Yes, we did. We agreed that my folks would take the Allisons home leaving a car for us to come home.

"Q. Did your folks take Mr. and Mrs. Allison home in their car?

"A. They did.

"Q. And the Allison car was left there for you and John Allison to come home in?

"A. That is right.

. . . . .

"Q. Before you started on that trip state whether or not you did anything in reference to preparing the car for the trip home.

"A. I did. As I remember, I got out of class somewhere around ten or ten-thirty and met John on his way to class, he had a later class than I had, he gave me a couple of dollars and asked me to gas up the car, whatever it needed; I took the car up town, had gas put

in, whatever it needed, added about one dollar eighty cents, two dollars of my own; drove it back to the Fraternity House.

"Q. Did you and John Allison belong to the same Fraternity?

"A. Yes, we did.

．　．　．　．　．

"Q. Calling your attention to the occasion when your parents and the Allison parents were at Miami University for Dad's Day, do you recall conversation between the six of you in which anything was said about your returning for Thanksgiving Vacation?

"A. Yes, Sir.

．　．　．　．　．

"Q. You recall where that conversation occurred?

"A. I believe it was at the Fraternity House.

"Q. You recall who was present at the time?

"A. I believe my folks, John's folks, John and I were there.

"Q. Please tell what was said in that conversation.

"A. Well, I don't remember who brought the matter up, but I do remember talking to my Dad, explaining to him we were going to be leaving shortly, that if he could leave the car down, it would save us some time, money, inconvenience in getting home; as I remember he had to go to Iowa to pick up my grandparents for Thanksgiving; John had spoken to his parents. Mr. Allison said if he had a way to get home, he didn't see why he couldn't leave his car for Barbara, John, and myself. My dad agreed to take them home, and that was it."

Appellee-Ely contends that the foregoing evidence is sufficient to warrant the jury in finding that at the time and place of the accident in which he received the injuries of which he complains he was being transported by the appellant for pay because the agreement, which made his presence in the car possible, provided:

(1) transportation for appellant's parents from Oxford, Ohio, to Naperville, Illinois; (2) transportation for appellant's sister from Oxford to Naperville, Illinois; (3) saving of train fare, bus fare, taxicab fare for appellant and his sister; (4) avoidance of discomfort on crowded trains; (5) convenience and a saving of time; and (6) a contribution from appellee to apply on the purchase of gasoline.

Whether or not the payment here alleged was such as was intended by the Legislature in §47-1021, supra, where it is said: "while being transported without payment therefor," is a matter of law to be decided by the court.

Considering the alleged elements of payment above-mentioned it seems clear to us that:

(1) Appellant was under no legal obligation to furnish transportation for his parents from Oxford, Ohio, to their home in Illinois, and under such circumstances it cannot be said that he was benefited thereby. Furthermore, the transportation of appellant's parents by the Elys was nothing more than a part of the convenience and fellowship accruing to all parties concerned by reason of the entire arrangement that the parents travel in one car and the children in another.

(2) We are unable to see how the convenience and small savings to appellant's sister, by reason of her being able to travel by automobile instead of by public carriers, could in any way be considered payment of passenger fare by appellee-Ely to appellant. This seems so obvious that it merits no further discussion.

(3) (4) (5) The saving in train fare and of time, and the convenience by reason of having an automobile for the trip home, were, in our judgment, not sufficient compensation to appellant or to his father—the owner of the automobile—to exclude appellee-Ely from the

provisions of the Guest Statute under the circumstances herein.

(6) The purchase of a few gallons of gasoline by appellee-Ely did not constitute "payment" for his transportation from Oxford, Ohio, to his home in Illinois. The payment of $1.80 for gasoline and the alleged benefits listed by appellee-Ely did not directly compensate either the driver or the owner of the automobile in a substantial or material manner. *Fuller* v. *Tucker* (1940), 4 Wash. 2d 426, 103 P. 2d 1086, 1088; *Lee Brothers* v. *Jones, supra* (1944), 114 Ind. App. 688, 698, 54 N. E. 2d 108; *Albert McGann Securities Co.* v. *Coen* (1943), 114 Ind. App. 60, 71, 48 N. E. 2d 58; *Kempin* v. *Mardis, Admx.* (1953), 123 Ind. App. 546, 550, 111 N. E. 2d 77; 3 I. L. E. Automobiles, §74, p. 428.

The Supreme Court of Washington had before it a question similar to the one here presented in *Fuller* v. *Tucker, supra.* In that case respondents owned two automobiles. The husband, respondent-appellee, had driven one of the automobiles, unaccompanied, to Olympia, Washington. Appellant and her daughter were permitted to use respondents' other car on condition that they secure a driver satisfactory to respondent-wife, transport her as far as Olympia (where she joined her husband), accompany the car and the driver from Olympia to Tacoma, Washington, return the car to Aberdeen to respondent-wife, to take from Aberdeen to Tacoma anyone who wished to go to the game and to bring back in the car anyone who wanted to return from Tacoma to Aberdeen, including Mrs. Tucker or her son, or anybody on the team. On the return trip appellant was injured in a wreck allegedly caused by the negligence of the driver of the car. Appellant there instituted an action to recover for her injuries as a

fare-paying passenger, asserting that the benefits accruing to respondents from appellant's occupancy of their automobile consisted of "showing the driver destinations instructed by owners, picking up passengers at the request of the owners, staying with the car on its return from Tacoma, and enabling respondent wife to ride with her husband in another family car from Olympia to Tacoma and from Tacoma to Aberdeen."

In answer to this assertion the Supreme Court of Washington, at page 1088 of 103 P. 2d, said:

"Appellant is not entitled to recover unless she can show payment for her transportation in respondents' automobile. She must show compensation to respondents in a business sense. There was no showing of an actual or potential benefit in a material or business sense resulting or to result to the respondents, and there is no evidence that the transportation of appellant was motivated by the expectation of such benefit.

"The carriage of appellant and the accommodation to respondents were given by the parties to each other from hospitable, neighborly and friendly motives only. The automobile trip was not taken in expectation of material gain. No business advantage or material consideration accrued to the respondent hosts in the transportation resulting in the injury to appellant. The services rendered by appellant to respondents are not such tangible benefits as the statute contemplates in order to remove appellant from the status of a guest."

We think the conclusions reached by the Supreme Court of Washington on the facts in the Fuller case apply with equal force to the facts in the present case.

The rules by which we must determine whether or not appellee-Ely has sustained his burden of proof on this question are well established in Indiana.

In determining whether a passenger in an automobile was a fare-paying passenger or a guest within the

meaning of the Guest Statute, this court in *Liberty Mut. Ins. Co.* v. *Stitzle, supra,* at page 185 of 220 Ind., said:

"The word 'guest' has more of social than business significance. The words 'without payment for such transportation' imply some valuable consideration for the ride. The presence of the person injured must have directly compensated the owner or operator in a substantial and material way. If the trip is primarily social, incidental benefits though monetary do not exclude the guest relationship. If the trip is primarily for business purposes and the one to be charged receives substantial benefit, though not payment in a strict sense, the guest relationship does not exist. Expectation of a material gain rather than social companionship must have motivated the owner or operator in inviting or permitting the other person to ride. . . .

"We do not consider the mere possibility of benefit sufficient to exclude the guest relationship. Some courts have said it must be 'tangible and direct.' The words imply reality, not potentiality. Courts should not be required to search for a benefit. If it is not apparent then it can hardly be said to be substantial or material."

The elements which distinguish a guest riding without payment for such transportation from a passenger for hire are to be found in the decisions of the courts of appeal in this State, and they are generally as follows:

(1) The motives and purposes which actuate the transaction are of prime importance. *Liberty Mut. Ins. Co.* v. *Stitzle, supra* (1942), 220 Ind. 180, 187, 41 N. E. 2d 133; *Swinney* v. *Roler* (1943), 113 Ind. App. 367, 370, 47 N. E. 2d 846; *Albert McGann Securities Co.* v. *Coen, supra* (1943), 114 Ind. App. 60, 69, 48 N. E. 2d 58; *Ott* v. *Perrin* (1945), 116 Ind. App. 315, 319, 63 N. E. 2d 163.

(2) The motivating reasons for the invitation to ride determine the character of the passenger, and the purpose of the trip. *Liberty Mut. Ins. Co.* v. *Stitzle, supra,* at page 185 of 220 Ind.; *Albert McGann Securities Co.* v. *Coen, supra,* at page 69 of 114 Ind. App.; *Ott* v. *Perrin, supra,* at page 319 of 116 Ind. App.; 3 I. L. E., Automobiles, §74, p. 428.

(3) If the purpose of the trip is primarily for business as distinguished from pleasure or social, and the presence of the passenger in the motor vehicle directly compensates the owner or operator thereof in a substantial and material way, then the guest relationship does not exist. *Liberty Mut. Ins. Co.* v. *Stitzle, supra,* at page 185 of 220 Ind.; *Swinney* v. *Roler, supra* (1943), 113 Ind. App. 367, 370, 47 N. E. 2d 846; *Albert McGann Securities Co. v. Coen, supra* (1943), 114 Ind. App. 60, 69, 48 N. E. 2d 58; *Lee Bros.* v. *Jones, supra* (1944), 114 Ind. App. 688, 698, 54 N. E. 2d 108; *Ott* v. *Perrin, supra* (1945), 116 Ind. App. 315, 319, 63 N. E. 2d 163.

(4) If the trip is primarily social or for pleasure as distinguished from business, incidental benefits, even the payment of money, do not exclude the guest relationship. *Frymier, Administrator* v. *Butler* (1942), 110 Ind. App. 531, 537, 39 N. E. 2d 809; *Liberty Mut. Ins. Co.* v. *Stitzle, supra,* at page 185 of 220 Ind.; *Swinney* v. *Roler, supra,* at page 370 of 113 Ind. App.; *Albert McGann Securities Co.* v. *Coen, supra* (1943), at page 69 of 114 Ind. App.; *Lee Bros.* v. *Jones, supra,* at page 698 of 114 Ind. App.; *Ott* v. *Perrin, supra,* at page 319 of 116 Ind. App.

(5) The word "guest" has more "social" than "business" significance. *Liberty Mut. Ins. Co.* v. *Stitzle, supra,* at page 185 of 220 Ind.

The motives which actuated both appellant and appellee herein were admittedly the saving of time necessary

to travel to their homes from school, the elimination of the inconvenience of making the trip by the public transportation then available; providing a way for appellant's sister, who was afflicted with mononucleosis, to go home for the Thanksgiving holiday without fighting the holiday traffic on public conveyances; and a saving in the expense by going in the automobile instead of by public transportation.

The entire transaction seems to us to be motivated by the desire of all concerned to get the children home for the Thanksgiving holiday as expeditiously as possible and with the least inconvenience.

The testimony as hereinabove recited of both appellant and appellee-Ely, as to the agreement for the trip, in our judgment, shows simply a friendly and social arrangement, whereby the parents returned home together in the Ely car, and appellee-Ely returned home with appellant and his sister in the Allison car. The motivating reasons for the trip clearly indicate more of a "social" arrangement between parents whose sons were living in the same Fraternity House and attending the same school, than a "business" purpose such as was the motivating reason for the trip in *Liberty Mut. Ins. Co.* v. *Stitzle, supra.*

A careful search of the record here reveals no expressed agreement between appellee-Ely and the appellant as to the payment of money for gasoline and oil, or any other expenses of the trip which would make appellee-Ely a fare-paying passenger and the trip one primarily for business purposes.

In our judgment the only inference that can reasonably be drawn from the evidence here is that the arrangement whereby the parents returned home in one car and the children in another, was solely for the purpose of getting their children

home for Thanksgiving more conveniently and expeditiously. Under the decisions of this court and the Appellate Court, such an arrangement cannot be said to be motivated by business reasons. It is our further judgment that the trip was purely social and no material gain was anticipated, even though there might have been some cost differential accruing to the parents. Cf.: *Frymier, Administrator* v. *Butler, supra* (1942), 110 Ind. App. 531, 536, 39 N. E. 2d 809.

As aforesaid, the burden was upon appellee-Ely to show that he was riding with appellant as a fare-paying passenger.

Appellant herein, at the close of all the evidence, moved for a directed verdict. This motion questions the sufficiency of the evidence as a matter of law to support appellee-Ely's allegation in his complaint that he was a fare-paying passenger. Considering the evidence and all reasonable inferences which may be drawn therefrom, it is our judgment that there is a total absence of evidence or reasonable inferences to support this allegation of the complaint.

In *Whitaker, Admr.* v. *Borntrager* (1954), 233 Ind. 678, at page 680, 122 N. E. 2d 734, this court said that a peremptory instruction to find for the defendant should be sustained "[w]hen there is a total absence of evidence or legitimate inference in favor of the plaintiff upon an essential issue; or where the evidence is without conflict and is susceptible of but one inference and that inference is in favor of the defendant." (Citing authorities.)

For the foregoing reasons the trial court erred in overruling defendant's (appellant-Allison) motion for a directed verdict made by him at the close of all the evidence in the case.

Because of the result which we have reached, it is not necessary to consider the other questions presented.

The judgment of the trial court is reversed with instructions to sustain defendant-appellant's motion for a directed verdict, and enter judgment accordingly.

Jackson, C. J., and Achor, J., concur.

Arterburn, J., dissents with opinion in which Landis, J., concurs.

## DISSENTING OPINION

ARTERBURN, J.—This case involves the "Guest Statute" in which one college student sued another as a result of an arrangement between the parents of the two students at a Dad's Day celebration to leave one of the cars for the students of both families to drive back home in at a later date for Thanksgiving vacation, while the parents returned together in the other car. Appellee-Ely, one of the students, was a passenger in the car driven by appellant-Allison, the other student, and sues for personal injuries resulting from an accident which occurred on the trip home for the Thanksgiving vacation.

This is one of those close cases upon which legal minds can easily differ. The question here is—was there an actual payment or consideration within the meaning of the Guest Statute? Acts 1937, ch. 259, §1, being §47-1021, Burns' 1952 Replacement.

I think the case of *Liberty Mut. Ins. Co.* v. *Stitzle* (1942), 220 Ind. 180, 41 N. E. 2d 133, 139 A. L. R. 1391 is determinative of the question here. In that case the driver and the passenger were on a trip to look over furniture in Chicago at the time of the accident. There was only an anticipated benefit to each, yet this court held the salesman riding with a prospective customer

was not a guest under the terms of the statute, but on the other hand, the trip was for business purposes and there was "payment" within the meaning of the statute.

In that case it is held that the issues of fact to support the allegations should be submitted to the jury.

In the case before us, likewise, there is a question of fact to be submitted for the determination of the jury, namely, did the parents *intend* to be bound by their promises to exchange the use of their cars?

Could an action for breach of contract have been maintained if the promised ride to appellee had been refused after the other ride provided in exchange therefor had been promised and furnished? Was the saving of the price of a railroad ticket from Miami, Ohio, to Chicago, Illinois, (a distance of approximately 300 miles) by the exchange of the cars which appellant-Allison testified was decided upon as an economy measure, a basis for the furnishing of the car? This and the entire testimony bearing upon the question of the purpose of the trip were proper to be considered by the jury in determining whether or not a binding contract was *intended,* and whether a valid consideration was involved, which under the statute, is a payment contemplated by the agreement. Consideration is legal payment in any contract.

The interpretation given the statute in the Liberty Mutual case was made in 1942, and so long as that interpretation remains undisturbed by the legislature, I feel bound to follow such interpretation rather than contravene what I feel is a ruling precedent of this court. There is some evidence in this case of a consideration or payment, although admittedly small, to go before the jury and in my opinion the trial court did not err in refusing to direct a verdict for the defendant-appellant.

The petition to transfer should be denied.

Landis, J., concurs in this dissent.

NOTE.—Reported in 170 N. E. 2d 371.