**ALLEN v. KECK.**

**No. 7660.**

United States District Court
W. D. Missouri, W. D.

July 30, 1953.

John W. Schwartz and J. D. James, Kansas City, Mo., for plaintiff.

Henry W. Buck and W. H. Hoffstot, Jr. (of Morrison, Hecker, Buck, Cozad & Rogers), Kansas City, Mo., for defendant.

DUNCAN, District Judge.

This is an action in behalf of the plaintiff against the defendant for damages for the death of her husband alleged to have been the result of the carelessness and negligence of the defendant in the operation of his motor vehicle in which the deceased and his wife were riding at the time.

Plaintiff is a resident of the State of Missouri; the defendant a resident of the State of Kansas. The tragedy out of which the death arose occurred in the State of Kansas, and is controlled by the laws of that State. Plaintiff's complaint alleges that:

"At the time of the aforesaid collision the defendant and his wife and the plaintiff and the deceased were on their way to Pleasanton, Kansas on a hunting trip. It was mutually agreed and understood before the trip was undertaken that expenses would be shared equally, that the task of driving would be shared equally, that the deceased would take defendant to the farm of the cousin of deceased and gain admittance to said farm for the purpose of hunting squirrels thereon; that they would share equally in any game resulting from the hunting trip; that they would each have an equal right to control the direction and route taken, and all other details of the trip, such as starting and stopping. It was not agreed which car was to be taken on the trip until the time of departure, at which time the deceased and his wife wanted to take their car but finally, upon and because of the insistance of defendant and his wife that it was their turn to take their car and that they did not want to have to unload and transfer to deceased's car numerous packages containing Christmas gifts and other articles which had already been packed in the defendant's car, deceased and his wife agreed to go in the car of the defendant."

Defendant has filed Motion for Summary Judgment contending that the deceased was a passenger in the automobile of the defendant at the time of his death, and that,

874

under the Kansas Guest Statute, the plaintiff is not entitled to recover. Section 8-122b, General Statutes of Kansas 1949, provides:

"Right of guest to collect damages from owner or operator. That no person who is transported by the owner or operator of a motor vehicle, as his guest, *without payment for such transportation,* shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the *gross and wanton negligence* of the operator of such motor vehicle." (Emphasis supplied.)

After the suit was filed in this court, defendant filed Motion to Dismiss on the same ground that is now contained in his Motion for Summary Judgment. At that time no depositions had been taken; there were no facts before the court, except the allegations of the complaint, and the court at that time could not say what evidence might be offered with respect to the nature of the negligence complained of which resulted in the death of the deceased—i. e., ordinary negligence, or gross and wanton negligence.

While general negligence apparently was alleged in the complaint, the plaintiff would have been entitled to introduce evidence showing gross negligence, if the facts justified it.

Therefore, because the factual situation had not been made clear to the court, the Motion to Dismiss should have been, and was overruled, but the same conditions are not now presented to the court. Since the Motion to Dismiss was overruled, the depositions of the plaintiff and the defendant and his wife, the only witnesses to the accident, have been taken and this evidence has been made available to the court.

I think the evidence as revealed in the depositions, placing upon it a construction most favorable to the plaintiff, presents to the court a clear-cut question of law as to whether or not the deceased was a guest within the meaning of the Kansas statute, or whether it was a joint enterprise, which would remove him from the provisions of the statute.

The testimony clearly shows that the plaintiff and her husband, and the defendant and his wife were acquaintances and close friends of long standing, the wives having been in grade school together at Pleasanton, Kansas, and had remained close and intimate friends for more than forty years.

For a number of years it had been the practice and custom of the parties to make trips together, some were long trips, some were short trips; they had made a trip or two to California, Minnesota and to the Ozarks on purely pleasure excursions; on all of the trips, according to the evidence of both parties, both families contributed to a "kitty" out of which the expenses were paid, with the exception that each family paid for their meals.

The undisputed facts also show that they alternated in taking their cars on these trips. It had also been their custom and practice for a number of years, to make several trips a year, probably as many as five or six, from their homes in Kansas City to Pleasanton, Kansas, where each family had relatives and friends, mainly for the purpose of visiting their relatives, and for an occasional hunting trip by the men.

The evidence indicates that there were two particular places where they did their hunting, on the farm of a relative of the deceased, and on the farm of a relative of the defendant. Neither would be permitted to hunt on the farm of the relative of the other unless they accompanied each other.

The facts show that on Friday night before the fatal injury, which was shortly after Christmas 1951, the parties were playing cards at the home of the defendant and his wife, which they apparently did very frequently, visiting back and forth at each other's home. During the course of the evening, either the defendant or his wife observed that they were going to Pleasanton on Sunday; the testimony of defendant and his wife indicating that the statement was that they were going for the pur-

pose of delivering family Christmas presents, which they had been prevented from doing on Christmas because of bad weather.

Upon such revelation on the part of defendant or his wife, either the deceased or his wife stated that they too were going to Pleasanton on Sunday to visit their relatives. It was then agreed that there was no reason for taking two cars, and that they would go together.

It is further indicated that there was some discussion between the men as to the question of hunting, but the evidence reveals that there was no discussion as to what they would hunt, or where. It seemed to be the mutual understanding that it would be as usual, either one or both of the farms of the relatives. Some further conversation took place between the parties on Saturday, occasioned by the illness of the plaintiff.

They finally met at an appointed place, each family in their own car on Sunday morning, and there a discussion took place as to whose car should be taken. It seemed to be conceded that considering the question of alternating in the driving of their cars to Pleasanton, it was the deceased's time to take his car, but that because of the fact that the defendant's car was loaded with Christmas presents and would require the transfer of those articles to the deceased's car, it was agreed that they would go in the defendant's car.

It was further testified to by both parties that in their trips to Pleasanton, as heretofore stated, five or six a year, the party whose car was not taken would buy the gasoline for the trip. However, on this occasion there was no discussion as to the purchase of any gasoline or any other financial arrangement concerning the trip, and none was bought; both parties testifying that it was their understanding that it would be in accordance with the long established custom, but there is no question that both families had expected to make the trip to Pleasanton before the discussion at the card game on Friday evening.

Therefore, the question before the court is whether or not these undisputed facts bring the deceased within the exception of the statute, i. e., did he pay for his transportation, or was it a joint enterprise?

Referring back to the allegations of the complaint, the evidence indicates that there was no discussion as to how any game would be shared, or whether there was any discussion as to the direction or routes and control of the operation of the car, or whose farm was to be hunted on, and it seems to me that no reasonable inferences may be drawn from the evidence that there was any such discussion—it was just another trip to Pleasanton under the same conditions that all other trips to that place had been made.

It seems to me that the undisputed facts clearly indicate that there was no payment for such transportation within the meaning of the statute. The only possible compensation that could have moved from the deceased to the defendant was for the purchase of gasoline. There was no such purchase, although it was their usual understanding that if gasoline was purchased, it would be purchased by the deceased. The evidence shows that upon all occasions it was not necessary to purchase gasoline for the round trip; if the gas tank happened to be full, there would be no occasion to purchase gasoline on the trip, but if it was necessary, then the non-owner would pay for it. That is the only question in the case it would seem, that could even remotely bring the case within the exceptions of the statute.

The defendant has not presented any Kansas authority to the court directly dealing with the question of the effect of purchasing gasoline by one riding in a car, but it has been passed on by the courts of other states that have the so-called "guest statute." The courts of Kansas have been rather strict in their construction of the "guest statute." In Pilcher v. Erny, 155 Kan. 257, 124 P.2d 461, 463, the court said:

"Applying the rule laid down in the above cases to the present situation and giving the plaintiff the benefit of all reasonable inferences to be drawn from her evidence we have concluded that the arrangement between herself and defendant as to payment for re-

pairing the coat was only incidental to the business for which he was making the trip to Stafford and beyond. There had been talk about plaintiff going as far as Stafford with him before he brought the coat in to be repaired. There can be no doubt that he would have gone there anyway regardless of any arrangement with plaintiff. G.S. 1935, 8–122b, was enacted to make it more difficult for guests to recover damages from their hosts on account of injuries sustained in automobile wrecks. It would not do to exempt carriers for hire from liability for such damages so. the provision making an exception in cases where the guest paid for his transportation was written into the statute. The intention was, however, that the exception should apply only where the payment was the chief motivating cause for the trip or carriage, not to a case such as we have here where the trip would have been made in any event by the driver of the car, and the plaintiff was in the car, in the main, on account of a desire on the part of the defendant to be accommodating and to extend the hospitality of his car to her and her son."

This doctrine was affirmed in Srajer **v.** Schwartzman, 164 Kan. 241, 188 P.2d 971. It was said In re Wright's Estate, 170 Kan. 600, 228 P.2d 911, 915:

"We think the statute is clear that in order for one * * * to recover for a wrongful death occasioned while being transported in the motor vehicle of another, claimant must, to avoid the limitations of our guest statute, affirmtively show that he was not a guest, that he was being transported for 'payment' as that term is defined by our decisions hereinafter discussed, or that injury or death was caused by gross and wanton negligence of the operator of the vehicle. This court has held in Srajer v. Schwartzman, 164 Kan. 241, 188 P.2d 971, that under our guest statute, in order to keep a passenger from being a guest by payment of transportation, there must be a substantial consideration of some sort moving to the

operator or owner of the vehicle. * * *"

In that case the court also referred to Pilcher v. Erny, supra, and quoted language used in that decision as follows:

"This court held that in order to show she was not a guest of defendant under our guest statute, it was incumbent on plaintiff to prove a substantial consideration moving to the operator or owner of the vehicle."

As heretofore stated, the parties have cited no case and we have found none, dealing directly with the question of whether or not the purchase of gasoline on a mutually conducted trip is compensation within the meaning of the statute. In other jurisdictions where this question has arisen, the courts have apparently determined that it is not compensation. In Voelkl v. Latin, 58 Ohio App. 245, 16 N.E.2d 519, 525, the court said:

" 'Under the wording of our guest statute, there is no intimation that a guest contributing to the general expense does not a matter of fact continue to be a guest. A "paying guest" is not unusual. It is a common practice among groups of friends to contribute to an automobile trip, primarily for their pleasure a just proportion of the expense, by the payment of the gasoline and oil.

" 'Can it be said that this mutual agreement destroys the reciprocal hospitality among friends, and makes the owner of the car practically a commercial hauler receiving compensation for his services? Such a holding would disrupt many trips of intimate friends.'

"We are convinced that the Guest Statute, passed for a very commendable purpose, should not be rendered practically void by holding that a contribution to common expenses of friendly parties makes those so contributing exempt from its effect.

"There is a well-defined distinction which will take from the operation of the statute those who are not in fact guests or those guests who really pay for their transportation and there is no

occasion to make friendly payments of small sums the occasion for emasculating the statute."

The Latin case cites Glendenning v. Simerman, 220 Iowa 739, 263 N.W. 248. The question has also been decided in McGann Securities Co. v. Coen, 114 Ind.App. 60, 48 N.E.2d 58, 1000. The question was before the Texas Civil Appeals Court in Raub v. Rowe, 119 S.W.2d 190, 193. There the court said:

"'The great weight of authority is to the effect that the sharing of the cost of gasoline and oil consumed on a trip, when that trip is taken for pleasure or social purposes, is nothing more than the exchange of social amenities and does not transform into a passenger one who without such exchange would be a guest, and consequently is not payment for the transportation or compensation within the meaning of the statute. It is obvious that if a different result obtains under any construction of the statute its purposes would be defeated and its effect annulled. * * *'"

Many other cases from other jurisdictions to the same effect might be cited.

I must therefore conclude as a matter of law, that the deceased did not pay for his transportation in such manner as to bring him within the exception of the statute, and unless the undisputed facts clearly show that it was such a mutual undertaking as to render inapplicable the provisions of the statute, the motion must be sustained.

To me the evidence clearly reveals that so far as plaintiff and deceased were concerned, it was a trip merely for social purposes, or a pleasure trip for the purpose of visiting friends and going hunting.

So far as the defendant and his wife were concerned, it was a trip mixed with pleasure and possibly a recognized family obligation to deliver Christmas presents. That delivery, according to the defendant and his wife, and I think is undisputed, was the primary purpose of the trip on their part.

Other than by way of vigorous argument, the plaintiff has cited no authorities to the court indicating the undisputed factual situation was a joint enterprise. I think we might apply the practical test and ask this question * * * had a third party, outside of the families of those concerned, been killed or injured, would the deceased, who was riding in the front seat with the driver, having no control over the operation of the car under the circumstances set out in this Memorandum, been held liable for the driver's negligence? If he could have been, then it was a joint enterprise. If he could not have been under the law, then it is not a joint enterprise.

If the matter were to be submitted to a jury, I should have to conclude that the deceased would not have been liable for the negligence of the driver in the operation of the car. Having answered it in the negative, it is obvious that they were not engaged in a joint enterprise, and that within the meaning of the statute, the deceased was a guest.

We having one remaining question * * i. e., was he removed from the operation of the statute by reason of the further exception that the accident "shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

There is no such allegation in the complaint. The evidence clearly reveals that no one knows just how it happened. Apparently, and the inference is too strong to be denied, the pavement was either covered with ice or was frosty and slick, and that through the application of the brake or some other cause which is not revealed, the car skidded into the abutment of a bridge, resulting in the death of the deceased.

There is nothing to indicate, and, as I understand, no claim on the part of the parties, that there was any "gross or wanton negligence" on the part of the driver.

In view of the aforesaid, the Motion for Summary Judgment is hereby sustained.

It Is Therefore Ordered, Adjudged and Decreed by the court that the plaintiff take nothing by her complaint, and that the defendant have and recover of the plaintiff, his costs in this behalf expended.