LIBERTY MUTUAL INSURANCE COMPANY *v.* STITZLE

[No. 27,613. Filed April 22, 1942. Rehearing
denied May 18, 1942].

*Adamson, Blair & Adamson,* of Terre Haute (*Thomas P. Gallagher,* of Terre Haute, of counsel), for appellant.

*McFaddin & McFaddin,* of Rockville, and *Cooper, Royse, Gambill & Crawford* of Terre Haute, for appellee.

RICHMAN, J.—Appellee's demurrers for want of facts were sustained to each of the two paragraphs of appellant's complaint. Declining to plead further appellant suffered judgment that it take nothing and appealed assigning separately as errors the rulings on the demurrers. The paragraphs are alike except as hereinafter indicated. We have condensed most of the allegations but quote where necessary.

Appellant carried compensation insurance on S. P. Brown & Co. which operated a household furnishing department in the Herz store in Terre Haute. Max Wallrich was the manager of the department and Merle Smedley an interior decorator and salesman therein employed. Appellee (defendant) was a customer of the department. The three "met" at about 5:30 a. m., September 1, 1936, and in appellee's car, she, Wallrich,

Smedley, Alice Miller and Myrtle Spohr started to Chicago. At the request of appellee, Wallrich was driving and appellee "was riding and directing the driving of said automobile from the front seat." Smedley and the other two "passengers" were in the rear seat. "The purpose of said trip was for the mutual, definite and tangible benefit of said defendant and said employees of said S. P. Brown & Company in that said defendant was furnishing her home by purchases from the S. P. Brown & Company Department at Terre Haute . . . , and that in doing the same it was necessary for said defendant and said employees to go to Chicago to select furniture and furnishings from the wholesale marts, which furniture and furnishings would be sold to her by and through the S. P. Brown & Company department . . . in which said employees would receive both a stated salary and a commission."

Smedley "while engaged in acts within the scope of his employment, and arising out of his employment was injured by reason of negligence of said defendant" who "carelessly and negligently interfered with the driver of said automobile in operating said automobile" by seizing the steering wheel and jerking the same from the hands and control of Wallrich in such a manner as to cramp the wheels, causing the car to turn over and catch fire injuring Smedley.

Smedley elected to claim and was awarded compensation from his employer for a period of 500 weeks of which appellant as insurance carrier has paid $1,433.10 and is obligated in the future to pay $3,566.90, and has paid medical expenses in the sum of $5,194.00, all of which are required by the Workmen's Compensation Act. The total liability of appellant under the award is $10,194.00.

In its first paragraph appellant as subrogee of Smed-

ley seeks to recover from appellee on account of her negligent injury of Smedley the exact amount of the award, $10,194.00, plus interest. In its second paragraph it seeks to recover Smedley's actual damages measured by the ordinary rules in common-law actions for personal injuries but not exceeding the sum of $10,194.00.

The first question presented is whether the relationship between appellee and Smedley was that of host and guest within the meaning of our "Guest Statute." If so, each paragraph of the complaint is bad for its failure to allege that the accident was intentional on the part of appellee or caused by her reckless disregard of the rights of others. There are no Indiana precedents.

We may eliminate the subject of imputed negligence which occupies considerable space in the briefs. If the guest relationship exists no question of negligence is involved. Conduct that is intentional or in reckless disregard of the rights of others is not imputed to an intermediary between the person charged with and the person seeking to recover on account of such conduct. Besides there is here no such intermediary. Appellee's own act in grabbing the wheel caused the upset in which Smedley was injured. To impute negligence there must always be a third person through whom it may be imputed. So even if Smedley was not a guest, there is no question herein of imputed negligence and the discussion thereof merely confuses the issue.

Much space in the briefs is also devoted to the subject of "joint enterprise." This also is confusing. All that we need determine to hold the complaint good as against the first principal contention is that Smedley was not a guest. The statute in force in 1936 when

this cause of action arose reads as follows: (Acts 1929, ch. 201, § 1, p. 679; subsequently amended in Acts 1937, ch. 259, § 1, p. 1229.)

". . . no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator, for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of such owner or operator or caused by his reckless disregard of the rights of others."

Many states have similar statutes. The cases construing them are in irreconcilable conflict. Even when there is substantial agreement as to the law its application frequently results in incongruity. After reading many cases we have arrived at the following conclusions as to the principles governing the application of this statute to the facts stated in appellant's complaint.

The word "guest" has more of social than business significance. The words "without payment for such transportation" imply some valuable consideration for the ride. The presence of the person injured must have directly compensated the owner or operator in a substantial and material way. If the trip is primarily social, incidental benefits though monetary do not exclude the guest relationship. If the trip is primarily for business purposes and the one to be charged receives substantial benefit, though not payment in a strict sense, the guest relationship does not exist. Expectation of a material gain rather than social companionship must have motivated the owner or operator in inviting or permitting the other person to ride. The following extract from the dissenting opinion in *Scholz* v. *Leuer* (1941), 7 Wash. (2d) 76, 95, 109 P. (2d) 294, 303, elaborates the thought:

"As indicated in the opinion of the majority, the mere rendition of benefits by a passenger is, of itself, insufficient to take one out of the 'guest' classification if the benefits are merely 'incidental to hospitality, companionship, or the like.' In resolving the question of benefits and the direction in which they flow, as well as their character and significance, a factor to be taken into consideration is the intention of the parties in entering upon the undertaking. If their actual and mutual purpose be to enter into a relationship *other* than that of host and guest, and their subsequent acts are not inconsistent with the intended relationship, the mere fact that, in the performance of the undertaking, the one party does nothing more than what a guest normally would do, will not convert the relationship into one of host and guest.

"On the other hand, where the intended relationship *is* that of host and guest, the mere fact that benefits have been conferred upon the host will not change his legal status nor that of his guest. Thus, the motives which actuate the parties concerned constitute a primary consideration. Accordingly, when the 'benefit' rule is invoked, the transportation must have found its impulse in some mutual understanding from which the carrier has the right to obtain, or expect, some material benefit to himself."

We do not consider the mere possibility of benefit sufficient to exclude the guest relationship. Some courts have said it must be "tangible and direct." The words imply reality, not potentiality. Courts should not be required to search for a benefit. If it is not apparent then it can hardly be said to be substantial or material.

In the light of these principles we examine the complaint. Appellant has undertaken to plead facts showing that Smedley was not a guest. This seems to be its burden for the act of riding in a car owned by another is consistent with several relationships with differing duties and the plaintiff ought

to show upon which of them he relies. The first essential in a negligence action is to find a duty to exercise ordinary care. If no such duty exists there can be no recovery. So as a part of his general burden the plaintiff is required to show the facts upon which the duty arises. The cases incline to this view. *Clendenning* v. *Simerman* (1935), 220 Ia. 739, 741, 263 N. W. 248, 249; *Voelkl* v. *Latin, Admr.* (1938), 58 Oh. App. 245, 16 N. E. (2d) 519; *Smith* v. *Laflar* (1931), 137 Ore. 230, 2 P (2d) 18; *Jenkins* v. *National Paint & Varnish Co.* (1936), 17 Cal. App. (2d) 161, 61 P (2d) 780. See 9 Blashfield, Cyc. of Automobile Law and Practice, Perm. Ed., § 6146, p. 558.

Of primary importance are the motives actuating the parties. These motives are stated in the sentence beginning: *"The* purpose of said trip. . . ."* What took place prior to the time when they "met" is summarized in the conclusion, which we think is one of fact, that the trip had as its purpose the selection of furniture in Chicago for a house which appellee was furnishing. We give no controlling force to the words "mutual, definite and tangible benefit" for by the words "in that" they are limited to such a benefit as is disclosed by the phrases which follow. The most that we can see in these phrases is that appellee desired the manager and interior decorator of a retail furniture store to help her select, not as her agents but as salesmen, merchandise displayed in wholesale markets. This they hoped to sell and she expected to buy. The words "would be sold" exclude the suggestion that there was a completed or executory contract of sale. It is alleged that it was necessary for them to go to Chicago but not that they must go together or in her car. That they might obtain commissions on the sales, if made, is not material.

In substance it is alleged that the purpose of the trip was to select furniture which would be sold to her by the men who made the trip with her. Use of the definite article "the" limits the word "purpose" to that which follows which shows a business not a social relationship. Our difficulty is in finding such a benefit running to the prospective purchaser as will satisfy the phrase "without payment for such transportation." There is no showing of any monetary profit to her. If she should purchase it would be at retail not wholesale prices. There is no showing of any peculiar qualifications which made Smedley's service more valuable to her than that of any other interior decorator or salesman. It does not appear that she would not have had access to the wholesale markets if the two men had not been with her.

On the other hand it does appear that with them she would have such access, that even though they were not her agents they would help her select furniture and furnishings for her house, that she was dealing with them as a "customer" of their store, and that *the* purpose of the trip was to accomplish such selection and purchases. Granting such a mutual purpose, she probably would be enabled to furnish her home which was evidently the end she sought to attain. We cannot say as a matter of law that this was not such a substantial, material benefit to her as to pay her for their transportation. We conclude that on this question appellant's complaint was sufficient to permit an inquiry into all the circumstances which, when developed by the evidence, may fill in the details of the sketch before us or may paint an entirely different picture.

The second question presented is whether appellant as subrogee may maintain the action. No equitable

right of subrogation exists because the whole debt for which appellant became liable has not been paid. *Miami County Bank* v. *State ex rel.* (1916), 61 Ind. App. 360, 372, 112 N. E. 40, 44, *Maryland Casualty Co.* v. *Cleveland, etc., R. Co.* (1919), 74 Ind. App. 272, 276, 124 N. E. 774, 775. Reliance is solely on section 13 of the Workmen's Compensation Act, § 40-1213, Burns' 1933, § 16389, Baldwin's 1934, reading:

"Whenever an injury or death, for which compensation is payable under this act, shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee, or his dependents, in case of death, at his or their option, may claim compensation from the employer or proceed at law against such other person to recover damages or may proceed against the employer for compensation and against such other person to recover damages at the same time, but he or they shall not collect from both; and, if compensation is awarded and accepted under this act, the employer, having paid compensation or having become liable therefor, may collect in his own name or in the name of the injured employee, or, in case of death, in the name of his dependents, from the other person in whom legal liability for damages exists, the *compensation* paid or payable to the injured employee or his dependents." (Our italics.)

The theory of the first paragraph of complaint is that section 13 authorizes recovery of the exact amount for which the employer became liable. Appellee says that so construed the section is unconstitutional. There is merit in the contention. *Liability Ins. Co.* v. *Elevator Co.* (1930), 160 Tenn. 248, 23 S. W. (2d) 245; *Taylorville* v. *Ill. Pub. Service Co.* (1922), 301 Ill. 157, 133 N. E. 720.

To meet this objection appellant filed its second paragraph of complaint on the theory that section 13

must be so construed as to limit the amount of damages recoverable to the amount of the compensation for which the employer became liable, but not substitute the compensation award for the usual measure of damages in tort actions. To this appellee says that section 13 is without ambiguity and therefore any such construction would be judicial legislation.

This court held in *Employers' Liability Assurance Co.* v. *Indianapolis and Cincinnati Traction Co.* (1924), 195 Ind. 91, 144 N. E. 615, that section 13 as originally enacted (Acts 1915, ch. 106, p. 395) does not create a new cause of action but permits an employer (or his insurance carrier) to enforce a liability already existing. Relying on this case the Supreme Court of Tennessee in *Liability Ins. Co.* v. *Elevator Co., supra,* construed an identical section in the Tennessee statute as limiting but not fixing the amount of recovery in the tort action. We quote: (160 Tenn. 248, 253)

> "The obvious effect of this construction of the section is that the clause conferring upon the employer the right to 'collect' from the 'person in whom legal liability for damages exists the indemnity paid or payable to the injured employee,' authorizes a recovery by or for the employer only of such damages as the injured employee could have recovered for the injury suffered by him, up to and not exceeding the amount of the indemnity paid or payable by the employer, and the legal liability of the person wrongfully responsible for the injury is in no way nor amount increased by the statute.
>
> "We think this is the true and reasonable construction of section 14 of our statute. The legal liability of a wrongdoer for damages for injuries caused by his tort is determined by the injury inflicted and the consequences naturally and proximately following therefrom. Unless forced to do so by express provision of statute, we would not impute to the Legislature an intention to make the measure of this liability dependent on a subsequent

election of the injured person to claim or refuse compensation from another source, to the prejudice of the person liable. To so construe section 14 would clearly render it subject to the constitutional objections urged by the demurrer and by the brief of the defendant in error. It is the duty of the court to give to the statute that reasonable construction which will not destroy it, and it is not to be presumed that the Legislature intended to enact a provision in conflict with the constitutions of the State and Nation. *Riggins* v. *Tyler*, 134 Tenn., 577, 581-583, and cases there cited.

"Section 14 purports to deal only with injuries 'sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto.' This has reference to a legal liability under the general law of torts, and not a legal liability created by the compensation statute. And the provision authorizing a suit by the employer of the injured person permits it to be brought against 'the other person in whom legal liability for damages exists.' Here also the reference is to a legal liability created by the law with respect to torts, and it is this liability only which may be enforced at the suit of the employer. In such a suit the employer may 'collect' the indemnity paid or payable to the injured employee. The word 'collect' is not a term usually found in statutes creating legal liability, and imports an act of payment without reference to the legal grounds on which payment may be demanded. We think the clear and necessary inference is that the employer may 'collect' the indemnity from the person 'in whom legal liability for damages exists,' only to the extent of that legal liability, and the measure of that liability is the right of the injured person to damages under the general law of torts.

"In an action brought by or for the employer, under section 14, therefore, the legal liability of the defendant and the measure of damages are the same as if the action had been brought by the injured employee, to determine which the parties are entitled to a jury; and if damages to which the injured employee is entitled are less than the compensation paid or payable by the employer, his recovery will be limited accordingly. If the dam-

ages to which the injured employee would have been entitled are greater than the amount of compensation paid or payable, the recovery will nevertheless be limited to the latter amount by the terms of the statute."

Section 13 of the Indiana Act originally permitted subrogation when the employee had been injured but not when he had been killed. In 1919 it was ■ broadened to cover subrogation where death by wrongful act had occurred. In the process of amendment the word "compensation" was substituted for "indemnity" in the phrase where the former appears above in italics. We think this change may have been made to remove any doubt that the employer might bring the action before completing payment of the award. "Indemnity" carries the implication of reimbursement for a loss already sustained. One may contract for but ordinarily does not collect indemnity for something payable in the future. We attach no other significance to the substitution.

It seems to be conceded that in the absence of statutory provision an employer or insurance carrier may resort to the equitable doctrine of subrogation ■ which presupposes payment. In such an action the damages would be measured as in any tort action but could not exceed the amount that plaintiff had paid. Compensation is paid in instalments, sometimes extending over a period of nearly ten years. Applying the principles declared in the Employers' Liability case, *supra,* the action would have to be brought within two years, which is the statutory limitation of time in which it may be filed by the injured employee or his dependents. Instalments of compensation accruing after two years had elapsed would not be recoverable were it not for the statute the purpose of which is to include in the subrogee's recovery not

only what he has already paid but that which he is obligated to pay in the future. We do not find any other motive for the legislation. We are satisfied that there was no intent to change the liability of the tort-feasor or to deprive him of any of his constitutional rights. Looking at the whole section and its purpose we believe that no violence is done to approved rules of statutory construction by accepting the reasoning and conclusions of the Tennessee court.

It follows that the court erred in sustaining appellee's demurrer to the second paragraph of complaint and for that reason the judgment is reversed for further proceedings in harmony with this opinion.

NOTE.—Reported in 41 N. E. (2d) 133, 139 A. L. R. 1391.