KNUCKLES *v.* ELLIOTT.

[No. 20,223.   Filed June 15, 1967.   Rehearing denied July 18, 1967.]
Transfer denied October 31, 1967.]

*Charles H. Foley*, of Martinsville, *Keith C. Reese* and *Rocap, Rocap, Reese & Robb* of Indianapolis, for appellant.

*H. William Irwin*, and *Murray, Stewart, Irwin & Gilliom*, of counsel, of Indianapolis, for appellee.

PRIME, J.—This case is an appeal from a judgment in favor of the Appellee in which she recovered damages against the Appellant as a result of injuries sustained in an accident in which the automobile in which she was riding overturned. The car was driven by Mildred Knuckles and was owned by her.

Also riding in the car at the time were the Appellant's mother, who was killed in the accident, the Appellant's step-

father, Thomas Sayler, and Margaret Elliott, the mother of Thomas Sayler. There was also another passenger, a small child who was the daughter of Mildred Knuckles, the Appellant.

Thus, we have a step-grandmother as Plaintiff and the step-grandchild as Defendant.

The important fact to be concerned with here is whether or not the grandmother was a guest or a paying passenger. The testimony showed that Sayler paid for some of the gasoline on the trip and provided the payment for food on the trip.

By reason of this arrangement, the Appellee contends that she was a paying passenger. The Appellant contends that she was merely a guest.

The Plaintiff-Appellee prevailed in the trial court and recovered a judgment for $10,000 after a jury verdict in that amount.

We have here the task of again interpreting the Guest Statute of Indiana. We set it out:

"The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle." Acts 1929, Ch. 201, § 1, P. 679; 1937, Ch. 259, § 1, P. 1229, Burns' Indiana Statutes (1952), Repl. Sec. 47-1021.

This case contains a set of facts common to many law suits which involve the so called Guest Law of Indiana. A group of people decide to take a car trip together and there is some mutual arrangement entered into concerning the payment of expenses. The case at bar is typical. One party drove the car —another party bought the gas and paid for the lunch. There is nothing disputed or confusing in the record on this score.

A condensed recital of the testimonial evidence touching upon the "payment" phase of this matter is as follows:

*Thomas Sayler:*

". . . I had a conversation with my step-daughter and she said if she could get her car fixed or trade for another car, she would take us down for expenses. We told her we had to go on the bus and she told us she would take us down there to get mother if we woud pay the expenses there and back . . . The first stop we made for gas was along towards Louisville and I bought the gasoline, I paid for $2.76; Mildred McClurg bought no gasoline before I bought it; she didn't pay for any gasoline or oil; I paid for the gasoline and oil on this trip from the time we left Indianapolis until the time of the accident; no one else bought gasoline or oil; I believe to the best of my knowledge I spent $25.41 for eats and everything, gas and oil. When we stopped to eat, I paid for the food and paid for the food and gas; and that included Mrs. McClurg and her daughter . . . After we left Pineville somewhere along the way we stopped to eat and we got gas at Pineville, "filled her up;" I paid $5.00 for the gas; I gave the money to Mildred, as I was in the back seat; we stopped near Standford to get something to eat; Viola and Mildred went in and got their lunches, I gave them the money about $4.55. After we left Standford, we came to Louisville and Viola with her little boy got out there; we crossed the bridge and somewhere in Indiana stopped for gas again; I paid for the gas about $5.00 . . ."

*Mildred McClurg:*

". . . I had a conversation with Mr. Sayler and my mother concerning the trip to Kentucky in September; it was about the first week just before the Friday when we went to Kentucky. We had the conversation in mother's apartment; it was on Friday, September 11th; my mother had been wanting to go to Kentucky . . . Mr. Sayler wanted to go to see his folks and I wanted to go to see my brothers and sisters. Nothing was said in that conversation about going down and picking up Mrs. Elliott; nothing was said in that conversation that Mr. Sayler would pay the expenses of the gas and oil on the trip . . . I stopped on my way home and filled up the tank with gasoline; we didn't stop until we got through Louisville, at Bardstown; we got gas there; Mr. Sayler paid for it; we ate there and he paid for the

food . . . Mrs. Elliott's daughter, Bertha, told me that Mrs. Elliott was coming back home with Mr. Sayler; that was the first time I knew Mrs. Elliott was going to come to Indianapolis to visit; I made no objection to that; we loaded up at Pineville, and Mrs. Elliott got in the car; I got gas at Pineville, Mr. Sayler paid for it; the first stop we made was at London, Kentucky, where we stopped and ate; Mr. Sayler paid for the food; he paid for everybody's meal; we were all sitting at the table together and he, Mr. Sayler, gave us the money to pay for our dinner; he paid the extra to the cashier . . . We stopped again for gas and Mr. Sayler paid for it . . ."

The Appellee reasons that this evidence is sufficient to establish that she was being transported for pay.

The burden was upon the Appellee Elliott to show by a preponderance of the evidence that she was a "fare-paying" passenger and not a guest within the meaning of the Statute. *Liberty Mutual Insurance Co.* v. *Stitzle* (1942) 220 Ind. 180, 41 N. E. 2d 133.

Whether or not the kind of payment here alleged was such as was intended by the Legislature in § 47-1021, where it is said, "while being transported without payment therefor," is a matter of law to be decided by the court. *Allison* v. *Ely* (1960) 241 Ind. 248, 170 N. E. 2d 371.

"The purchase of a few gallons of gasoline by Appellee-Ely did not constitute payment for his transportation . . . the payment did not directly compensate either the driver or the owner of the automobile in a substantial or material manner." *Allison* v. *Ely, supra.*

Other states have spoken on the subject:

"Appellant is not entitled to recover unless she can show payment for her transportation in respondent's automobile. She must show compensation to respondents in a business sense. There was no showing of an actual or potential benefit in a material or business sense resulting or to result to the respondents, and there is no evidence that the transportation of Appellant was motivated by the expectation of such benefit.

The carriage of Apppellant and the accommodation to respondents were given by the parties to each other from

hospitable, neighborly and friendly motives only. The automobile trip was not taken in expectation of material gain. No business advantage or material consideration accrued to the respondent hosts in the transportation resulting in the injury to Appellant. The services rendered by Appellant to respondents are not such tangible benefits as the statute contemplates in order to remove Appellant from the status of a guest." *Fuller v. Tucker* (1940), 4 Wash. 2d 426, 103 Pac. 2d 1086.

"The word 'guest' has more of social than business significance. The words 'without payment for such transportation' imply some valuable consideration for the ride. The presence of the person injured must have directly compensated the owner or operator in a substantial and material way. If the trip is primarily social, incidental benefits though monetary do not exclude the guest relationship. If the trip is primarily for business purposes and the one to be charged receives substantial benefit, though not payment in a strict sense, the guest relationship does not exist. Expectation of a material gain rather than social companionship must have motivated the owner or operator in inviting or permitting the other person to ride . . .

"We do not consider the mere possibility of benefit sufficient to exclude the guest relationship. Some courts have said it must be 'tangible and direct.' The words imply reality, not potentiality. Courts should not be required to search for a benefit. If it is not apparent then it can hardly be said to be substantial or material." *Liberty Mutual Insurance Co., v. Stitzle, supra.*

The purpose of the trip is one of the principal factors in determining the status of a passenger. *Liberty Mutual Insurance Co. v. Stitzle, supra. Swinney v. Roler* (1943), 113 Ind. App. 367, 47 N. E. 2d 846; *Ott v. Perrin* (1945), 116 Ind. App. 315, 63 N. E. 2d 163.

If the trip is primarily social or for pleasure as distinguished from business, incidental benefits, even the payment of money, do not exclude the guest relationship. *Liberty Mutual Insurance Co., v. Stitzle, supra,* P. 185. *Lee Bros v. Jones* (1944), 114 Ind. App. 688, 698, 54 N. E. 2d 108; *Ott v. Perrin, supra,* P. 319.

"The motive which actuated both Appellant and Appellee herein were admittedly the saving of time necessary to travel to their homes from school, the elimination of the inconvenience of making the trip by the public transportation then available . . . the entire transaction seems to us to be motivated by the desire of all concerned to get the children home . . ." *Allison* v. *Ely, supra.*

It is interesting to follow the progress of *Allison* v. *Ely* in our courts.

The case originally was determined in this court in 1959. At that time the appeal was determined in favor of the Appellee who had recovered in the lower court as a fare-paying guest. *Allison* v. *Ely* (1959), 159 N. E. 2d 717.

Judge Cooper then, as now, a member of this court, dissented to the majority opinion. Among other statements he wrote:

"I am of the opinion that usually the question of whether a party is a "guest" in a motor vehicle under our "Guest Statute" is a mixed question of law and fact because of the prohibition contained in the statute. When the controlling facts are undisputed, as in this cause now before us, and where only one reasonable inference can be drawn therefrom will lead to but one conclusion, it becomes solely a question of law. It is only where the facts are in conflict and that reasonable minds may draw different inferences therefrom that the question is one of fact for the determination of the jury."

"The basic question, in my opinion, is very clearly set forth in the decisions of our courts. The criterion of guest on the one hand or guest being transported with payment therefor, is: What is the intended relationship of the parties as between the parties? In ascertaining the answer to this query, the first determination to be made is: What was the purpose of the trip as between the guest, with or without payment, and the host, the driver of the car? This is a rational and logical prime inquiry because the word, "payment," ordinarly means turning over money by the payor to the payee. If, however, the object of the trip is a business matter between the passenger and driver, indirect benefits which may well ripen into money as the

result of the business relationship, do and should constitute payment for the transportation under the Guest Act."

Rehearing was denied by this Court.

Petition to transfer to the Supreme Court was granted and the case was reversed as reported in 241 Ind. 248.

It is again interesting to note that the Supreme Court was not of one mind in the matter. Judge Arterburn wrote a dissenting opinion in which Judge Landis concurred. He wrote:

"This is one of those close cases in which legal minds can easily differ. The question here is—was there an actual payment or consideration within the meaning of the Guest Statute?"

"Could an action for breach of contract have been maintained if the promised ride to Appellee had been refused after the other ride provided in exchange therefor had been promised and furnished? Was the saving of the price of a railroad ticket from Miami, Ohio, to Chicago, Illinois, (a distance of approximately 300 miles) by the exchange of the cars which Appellant-Allison testified was decided upon as an economy measure, a basis for the furnishing of the car? This and the entire testimony bearing upon the question of the purpose of the trip were proper to be considered by the jury in determining whether or not a binding contract was intended, and whether a valid consideration was involved, which under the statute, is a payment contemplated by the agreement. Consideration is legal payment in any contract."

We set out the above comments from both sides to demonstrate the characteristics of the case at bar.

To exclude from the Guest Statute cases of this nature where groups of friends or relatives make arrangements to travel together, consideration must be given by the guest in excess of expenses incidental to the trip. There must be a clear intent on the part of the owner of the vehicle to receive something more than mere reimbursement for such expenses incurred. Little or no economic benefit accrued to Appellant in this case.

The case at bar does not meet this standard and is reversed.

Judgment reversed.

Cooper, J. concurs.

Carson, P. J., Faulconer, J. concur in result.

NOTE.—Reported in 227 N. E. 2d 179.