CHARLENE FURNISS ET UX. *v.* HAROLD C. WATERS.

[No. 1270A279. Filed December 30, 1971. Rehearing denied January 21, 1972. Transfer denied June 29, 1972.]

*Ronald L. Sowers, Torborg, Miller, Moss, Harris & Sowers, Robert J. Parrish, Jackson, Parrish & Larson,* all of Fort Wayne, for appellants.

*J. Michael O'Hara, John F. Lyons, Barrett, Barrett & Mc-Nagny,* of Fort Wayne, for appellee.

SULLIVAN, P. J.—This consolidated appeal from judgments in companion cases filed by Mr. and Mrs. Furniss, plaintiffs-appellants, involves the Indiana guest statute.

In November of 1966, soon after she was hired to work at the local General Electric plant, Mrs. Furniss called Mr. Waters, defendant-appellee, who was her brother-in-law and also an employee at the plant, to arrange for a daily ride to and from the plant, with a payment of $3 weekly. As a result of such arrangement, Mr. Waters made a substantial departure from his normal route in order to pick up Mrs. Furniss around 6 a.m. and to drop her off in the late afternoon. At the end of each of the 28 weeks (7 months) that they rode to-

gether, Mrs. Furniss left $3 on the front seat of Mr. Waters' car.

On May 29, 1967, while en route to work, Mr. Waters, as alleged in the complaint and as later admitted by him, ran a "red light" at approximately 6:15 a.m. and collided with another vehicle, thus causing bodily injury to Mrs. Furniss. The companion complaints of Mr. and Mrs. Furniss were filed May 14, 1969, both alleging that Mrs. Furniss was a paying passenger at the time of the accident.

Both parties filed motions for summary judgment on February 24, 1970. The trial court granted the motion of the defendant, finding that there was lack of "payment" and that the blood relationship of Mr. Waters and Mrs. Furniss was the chief motivating reason for the rides. The Furniss' unsuccessful motion to correct errors alleged that the decision of the trial court was contrary to law and not supported by the supporting documents submitted at the time of summary judgment.

For purposes of appeal the appellants have reduced their allegations of error to one essential issue: Was the trial court correct in deciding, as a matter of law, that there was *not* "payment" given by Furniss (passenger) to Waters (auto owner and operator) of the kind or character required by the Indiana guest statute so as to exempt Mrs. Furniss from guest status at the time of the collision?

## *"PAYMENT" UNDER INDIANA GUEST STATUTE*

The Indiana guest statute, IC 1971, 9-3-3-1, being Ind. Ann. Stat. § 47-1021 (Burns 1965 Repl.), is as follows:

"The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, *while being transported without payment therefor,* in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible

for the operation of such motor vehicle." (Emphasis supplied)

It is clear under the case law of this state that determination of "payment" involves not simply a weighing of benefits given and received but also contemplation of the factors ■ surrounding the transportation which are indicative of the status of the passenger.

The words "without payment therefor" imply some *valuable consideration* given for the ride. The owner or operator must be *directly compensated* in a *substantial* and *material* way by the *presence* of the person injured for there to be "payment." *Liberty Mut. Ins. Co.* v. *Stitzle* (1942), 220 Ind. 180, 41 N. E. 2d 133.

Even where there is a flow of benefits, such a showing is not dispositive of the issue of status. As stated in *Allison* v. *Ely et al.* (1960), 241 Ind. 248, 170 N. E. 2d 371, there are many factors to be considered by a court which distinguish a guest riding without payment for such transportation from a passenger for hire:

"(1) The motives and purposes which actuate ■ the transaction are of prime importance. (Citations omitted)

"(2) The motivating reasons for the invitation to ride determine the character of the passenger, and the purpose of the trip. (Citations omitted)

"(3) If the purpose of the trip is primarily for business as distinguished from pleasure or social, and the presence of the passenger in the motor vehicle directly compensates the owner or operator thereof in a substantial and material way, then the guest relationship does not exist. (Citations omitted)

"(4) If the trip is primarily social or for pleasure as distinguished from business, incidental benefits, even the payment of money, do not exclude the guest relationship. (Citations omitted)

"(5) The word 'guest' has more 'social' than 'business' significance. (Citation omitted)" 241 Ind. 248, at 262-263.

Thus, evidence which shows the flow of benefits, the purpose of the trip, and the motives of the parties in arranging such transportation, must be carefully weighed in order to determine the exact status of the plaintiff. A single factor, such as familial relationship, cannot be held singularly determinative of the issue when other factors are present.

In granting summary judgment for the defendant, the trial court found erroneously, we feel, that the daily trips to and from the General Electric plant were primarily social in nature, and that the money given to Waters was therefore "incidental." The court appears to place great emphasis upon the familial relationship between Mrs. Furniss and Mr. Waters—sister-in-law and brother-in-law—in reaching the conclusion that there was no genuine issue of fact. Such conclusion does not necessarily follow where, as here, the familial relationship is not demonstrably one of cordiality and love, and where the owner-operator is requested to provide daily transportation to work. See *Martinez* v. *Southern Pacific Co.* (1955), 45 Cal. 2d 244, 288 P. 2d 868 (Where several members of the same family alternately drove other family members to work, the court found an expectation of benefit to the family) ; *McNanna* v. *Gach* (1964), 51 Ill. App. 2d 276, 201 N. E. 2d 191 (Where a college student drove fellow students to campus for $2 weekly, the court found substantial economic benefit to defendant since he was obligated to make the trip in any event).[1]

In this case the purpose of the trips could hardly have been mistaken. Both Mr. Waters and Mrs. Furniss were employed at the local General Electric plant and both had to be on the job at an early morning hour. From the affidavit and depositions of record there is no indication that their sunrise jour-

---

1. The difficult question is not whether the defendant would have made the trip anyway but whether the plaintiff would have been riding in the vehicle had it not been for the payment. *Ward* v. *Dwyer* (1954), 177 Kan. 212, 277 P. 2d 644.

neys were ever diverted from either of the two direct routes taken to the plant, or that any social purposes were ever served by such daily trips.

There was, we think, an adequacy of benefit flowing to Mr. Waters from the fact of Mrs. Furniss' presence in the vehicle. While there is evidence of Mr. Waters' reluctance to take the three dollars per week proffered by Mrs. Furniss (argued by Mrs. Furniss to be due to the familial relationship existing between them), Waters did not reject it. (Whether the three-dollar weekly payment was substantial and material is at least subject to differing viewpoints.)

We do not, however, rely upon the three-dollar sum as being sufficient to remove Mrs. Furniss from guest status. Rather, we find the intangible benefits "peace of mind" and "familial harmony," which the daily presence of Mrs. Furniss in Mr. Waters' vehicle may have bestowed upon him, to be so substantial and material, in light of the obvious purpose of the daily trips, that Mrs. Furniss might be considered by reasonable minds as a paid passenger.

The motives of the parties were not identical, nor need they be. Mrs. Furniss was motivated primarily by the desire for business transportation, and only incidentally by the desire for familial association. By his own admission, Mr. Waters found motive primarily in relief of conjugal pressure to be amiable to his wife's sister by assuming the task of taking her to and from their mutual place of employment—a compensation which, depending upon the degree of domestic tranquillity gained thereby, could be very substantial indeed.

For the plaintiff to be considered a paying passenger, the expectation of material gain, rather than social companionship, must be the controlling motive of the owner or operator. *Liberty Mut. Ins. Co.* v. *Stitzle, supra.* The expectation that Mr. Waters' marriage would perhaps chart a smoother course if he gave daily transportation to his wife's sister could be found unquestionably to be of substantial

and material gain to him,[2] and his controlling motive in providing such transportation.

## GRANTING OF SUMMARY JUDGMENT MOTION WHERE DIFFERENT INFERENCES CAN BE DRAWN FROM UNDISPUTED FACTS IS ERROR

In *Allison* v. *Ely* (1960), 241 Ind. 248, 170 N. E. 2d 371, a 3-2 decision, the majority of the Indiana Supreme Court held the determination of payment to be a matter of law:

> "Whether or not the payment here alleged was such as was intended by the Legislature in § 47-1021, *supra,* where it is said: 'while being transported without payment therefor,' is a matter of law to be decided by the court." 241 Ind. 248 at 259.

But in *Knuckles* v. *Elliott* (1967), 141 Ind. App. 232, 227 N. E. 2d 179, this court interpreted the *Allison* case, *supra,* and held that the trial court's determination of payment as a matter of law is concerned with the "kind" of payment made:

> "Whether or not the *kind* of payment here alleged was such as was intended by the Legislature in § 47-1021, where it is said, 'while being transported without payment therefor,' is a matter of law to be decided by the court. *Allison* v. *Ely* (1960), 241 Ind. 248, 170 N. E. 2d 371." 227 N. E. 2d 179, at 181 (Emphasis supplied)

In his dissent in the Supreme Court opinion in *Allison* v. *Ely* (1960), 241 Ind. 248, 266-267, 170 N. E. 2d 371,[3] Judge Arterburn persuasively reasoned that determination of certain payment factors, e.g., "intent" of the parties and whether the payments made were substantial, was proper subject matter for consideration by the jury.

2.   John Marquand said it well in his novel, "The Late George Apley": "Marriage . . . is a damnably serious business. . . ."

3.   Judge Cooper, in his dissent to the Appellate Court majority in *Allison* v. *Ely* (1959 Ind. App.), 159 N. E. 2d 717 (reversed on transfer), perhaps correctly felt the matter of payment to be a mixed question of law and fact.

Whether the question of payment is properly a matter of law or a mixed question of law and facts seems to depend upon the necessary inferences to be drawn from the evidence before the court. In *Allison, supra,* the holding of the court is properly confined to the principle that payment is a matter of law when there is but one inference to be drawn from the facts:

> "In our judgment the only inference that can reasonably be drawn from the evidence here is that the arrangement whereby the parents returned home in one car and the children in another, was solely for the purpose of getting their children home for Thanksgiving more conveniently and expeditiously. Under the decisions of this court and the Appellate Court, such an arrangement cannot be said to be motivated by business reasons." 241 Ind. 248, at 264-265.

Although the trial court, and later the appellee, here have argued that *Allison* controls as to determination of payment as a matter of law, the case here differs from *Allison* in two important respects. First, in *Allison* the trial court's refusal to grant a directed verdict on the issue of payment was challenged as opposed to the summary judgment for defendant here. Secondly, the Supreme Court in *Allison* found that but one inference could be drawn from the evidence whereas it must be concluded that several inferences could be properly drawn here.

Trial Rule 56 of the Indiana Rules of Civil Procedure provides for the removal from consideration by the trier of fact of genuine issues upon which there is no factual dispute, i.e., "no genuine issue of material fact." The trial court treated the question of payment as one of law since there was no dispute as to the pertinent facts. But, whether the issue of payment can be removed from a guest statute case by means of summary judgment, when the facts are not in dispute, seems to depend on the inferences which can reasonably be drawn. A case is not one to be decided on summary judgment, when, though the basic facts are not disputed, reasonable men may nevertheless disagree about

inferences, to be drawn from the facts. *Wozniczka* v. *McKean* (1969), 144 Ind. App. 471, 247 N. E. 2d 215.

Several inferences can be drawn from the undisputed facts concerning payment here. The trial court was therefore in error to conclude as a matter of law that there was no payment and to grant summary judgment on that issue of the case. The judgment of the trial is reversed.

Buchanan, Lowdermilk and Robertson, JJ., concur.

NOTE.—Reported in 277 N. E. 2d 48.