Lexie B. **ROBERTS** and Georgia M. Roberts, Plaintiffs-Appellants,

v.

Jackie L. **CHANEY**, Lowell Helton, and James Kirkman, a general partnership d/b/a C & H Stone Company, Jackie L. Chaney, Individually, Joseph F. Jennings and Laquita L. Jennings d/b/a Oolitic 66 Tavern, Public Service Company of Indiana, Inc., and C & H Stone Company, Inc., Defendants-Appellees.

No. 1–1083A330.

Court of Appeals of Indiana, First District.

July 17, 1984.

William C. Lloyd, Ferguson, Ferguson & Lloyd, Bloomington, for plaintiffs-appellants.

Edward F. McCrea, McCrea & McCrea, Bloomington, for defendants-appellees.

ROBERTSON, Judge.

Appellants, Lexie and Georgia Roberts appeal a decision rendered against them on a motion for summary judgment in a personal injury action against Jackie Chaney, individually, and Lowell Helton and James Kirkman, a general partnership doing business as C and H Stone Company.

We affirm.

Lexie and Georgia Roberts are husband and wife residing in Springville, Indiana. In September, 1981, Lexie was a full time employee of C and H, located in Bloomington, Indiana. In the course of his duties, Lexie often used his own truck and C and H would provide gas and oil.

On the morning of September 3, 1981, Lexie drove his truck to work giving a ride to two other C and H employees. At the end of the work day, as had happened in the past, several employees gathered in the office to play a game of poker. The two employees who had ridden to work with Lexie did not want to participate, so Lexie gave them permission to drive home in his truck. Lexie understood that he could get a ride with Chaney.

From approximately 3:30 p.m. to 5:15 p.m., Chaney and Lexie played poker and had one or two beers and some whiskey. After the game ended, Chaney and Lexie left the office to investigate a complaint registered by a tenant living in a nearby house owned by C and H. After that, the two men proceeded back to C and H, where they locked the front gate and then proceeded to Lexie's daughter's house to see whether Lexie's wife was there. Lexie's wife was not there, so the men agreed to drive to the Oolitic 66 Tavern. Upon their arrival at the tavern, it was approximately 7:30 p.m. and both men began drinking and conversing with others. Sometime between 9:00 and 12:30 a.m., Lexie left the tavern, went out to the truck and fell asleep. Chaney left the tavern at approximately 12:30 a.m. and began driving the truck toward Springville on State Road 58. While driving the truck, Chaney fell asleep at the wheel. The right front wheel of the truck left the pavement and Chaney awoke, but could not maneuver the truck back onto the pavement before the right side of the truck struck a utility pole. The pole caught the rear bumper of the truck, severely jerking the truck and throwing Lexie to the floorboard. As a result of the accident, Lexie was permanently rendered a quadriplegic.

On November 30, 1982, the Roberts filed a complaint against Chaney alleging he wantonly and willfully caused the accident resulting in his injuries. The complaint also alleged that C and H Stone Company was liable for the actions of Chaney under a theory of respondeat superior. They claim C and H was responsible through their sponsorship of the after-work social hour and in Chaney taking an employee home from an employment related event in a company owned vehicle.

Chaney filed a motion for summary judgment arguing that there were no issues of material fact with respect to the issue of his behavior being willful and wanton. He also alleged that the Roberts had not met the requirements of establishing liability under the Indiana Guest Statute. The Roberts argued that there is a factual dispute as to Chaney's intoxication and that the existence of a guest relationship is a question for the jury. On July 13, 1983, the

Superior Court of Monroe County granted Chaney's motion for summary judgment as to the application of the guest statute and the absence of wanton or willful misconduct.

The issues presented for review are as follows:

1. Whether Lexie Roberts was a guest within the meaning of IND.CODE 9–3–3–1, so as to preclude recovery for ordinary negligence.

2. Whether there exists sufficient evidence to support recovery based on a theory of wanton or willful misconduct.

3. Whether Chaney was acting within the scope of his employment so as to render C and H liable under a theory of respondeat superior.

On review of a grant of summary judgment, we must determine if there exists any genuine issue of material fact and whether the law was correctly applied. *Hale v. Peabody Coal Co.,* (1976) 168 Ind. App. 336, 343 N.E.2d 316. Any doubt about the existence of a genuine issue of material fact must be resolved against the moving party. Moreover, even if the facts are undisputed, summary judgment is inappropriate when the evidence before the court reveals a good faith dispute as to the inferences to be drawn from those facts. *Id.* In making its decision, the court may consider affidavits, depositions, admissions, interrogatories, and testimony. *Bassett v. Glock,* (1977) 174 Ind.App. 439, 368 N.E.2d 18.

The first issue concerns the trial court's determination that Lexie was a guest in the vehicle driven by Chaney and, as such, the Indiana Guest Statute applies to protect Chaney from any liability for negligence. The Roberts argue that the facts leading to the inference that Lexie was a guest are in dispute and consequently, summary judgment should not have been granted. The Indiana Guest Statute provides as follows:

> The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable· for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or ·upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or willful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle. ·

IND.CODE 9–3–3–1.[1]

The key to determining whether or not a passenger is a guest turns on the words "without payment therefor". In other words, was consideration given for the ride, or was the driver compensated in a substantial and material way. *Hainey v. Zink,* (1979) Ind.App., 394 N.E.2d 238. The mere possibility of a benefit is not enough, a benefit must be tangible and direct. *Liberty Mut. Ins. Co. v. Stitzle,* (1942) 270 Ind. 180, 41 N.E.2d 133. The courts are not required to search for the benefits, since if it is not apparent it cannot be said to be substantial or material. *Id.* ·

This flow of consideration or payment involves not simply a weighing of benefits given and received, but also con-

---

**1.** I.C. 9–3–3–1 pursuant to P.L. 68–1984, § 2 now reads as follows:

9–3–3–1 [47–1021]. Liability of owner or operator to certain relative and hitchhikers.—(a) As used in this section: "Hitchhiker" means a passenger who has solicited a ride in violation of I.C. 9–4–1–91(a).

"Child" or "stepchild" includes a child or stepchild of any age.

(b) The owner, operator, or person responsible for the operation of a motor vehicle is not liable for loss or damage arising from injuries to or the death of:

(1) His parent;
(2) His spouse;
(3) His child or stepchild;
(4) His brother;
(5) His sister; or
(6) A hitchhiker;

resulting from the operation of the motor vehicle while the parent, spouse, child or stepchild, brother, sister, or hitchhiker was being transported without payment therefor in or upon the motor vehicle, unless the injuries or death are caused by the wanton or willful misconduct of the operator, owner, or person responsible for the operation of the motor vehicle. [Acts 1929, ch. 201, § 1, p. 679; 1937, ch. 259, § 1, p. 1229; P.L. 68–1984, § 2.]

templation of the factors surrounding the transportation which are indicative of the status of the passenger. *Furniss et ux. v. Waters*, (1971) 150 Ind.App. 566, 277 N.E.2d 48. Our supreme court in *Allison v. Ely*, (1960) 241 Ind. 248, 170 N.E.2d 371, 378, 379, clearly stated that there are many factors to be used in distinguishing a guest from a passenger for hire:

1. The motives and purposes which actuate the transaction are of prime importance.

2. The motivating reasons for the invitation to ride determine the character of the passenger, and the purpose of the trip.

3. If the purpose of the trip is primarily for business as distinguished from pleasure or social, and the presence of the passenger in the motor vehicle directly compensates the owner or operator.

4. If the trip is primarily social or for pleasure as distinguished from business, incidental benefits, even the payment of money, do not exclude the guest relationship.

5. The word "guest" has more "social" than "business" significance.

Lexie Roberts admits that he did not pay money to Chaney in exchange for Chaney driving the vehicle from the Oolitic 66 Tavern to Lexie's home. Lexie tries to circumvent this problem by alleging some sort of mutual benefit due to Lexie being "on call" twenty four hours a day. This conclusion is based on the fact that Lexie always carried tools in his truck and thus, was "available" at any time. Lexie maintains that, in return, he received gas and oil and the privilege of using the same for his own personal use.

However, there are no facts indicating that this benefit was in any way bargained for as part and parcel of the employer-employee relationship. Lexie's gas and oil expenses were provided him regardless of whether he carried his tools in his truck and regardless of whether he drove his own truck to work or was given a ride. Any benefits that may have been received were merely incidental to the employment rather than a negotiated "pre-arrangement".

Lexie also argues that the circumstances surrounding the fact situation in this case are sufficiently work related to preclude application of the guest statute. However, the accident occurred at least nine hours after the end of the work day, the last four of which were spent at the Oolitic 66 Tavern. The last activity of Chaney and Lexie that was even remotely employment related was the locking of the C and H gate after their trip to investigate the tenant's complaint. The use of the vehicle thereafter was strictly for social purposes. Clearly, the facts in this case, as well as the inferences from those facts, leads us to but one conclusion and, that is, that at the time of the accident, Lexie and Chaney were involved in strictly social activity.

Lexie tries to compare this case to the case of *Ott v. Perrin*, (1945) 116 Ind.App. 315, 63 N.E.2d 163. However, the facts in *Ott v. Perrin* are decidedly different. During World War II, John Ott and Everett Perrin worked in the same factory and because of the gasoline shortage, they exchanged rides on a regular basis. This arrangement had been carried out by these men for some weeks prior to an accident which resulted in injuries to Mr. Perrin, who was a passenger in the Ott vehicle on the day of the accident. Here, Lexie did not regularly ride with Chaney, nor Chaney with Lexie. Consequently, there was no pre-arranged exchange of rides and also no history of an exchange of rides for any meaningful period of time prior to the accident. Consequently, the analogy to *Ott v. Perrin*, is misplaced.

■ The facts in this case indicate that there was insufficient payment or benefit involved in this situation to take it out of the guest/host context and the realm of the Indiana Guest Statute. Since the guest statute takes this case out of the realm of ordinary negligence, we must now determine whether there is evidence to support recovery based on a theory of wanton or willful misconduct.

The evidence required to demonstrate wanton or willful misconduct pursuant to the Indiana Guest Statute has been clearly set forth in numerous cases.

Wanton or willful misconduct requires that the host-driver be: (1) conscious of his misconduct; (2) motivated by reckless indifference for the safety of his guest; and (3) to know his conduct subjects his guests to a probability of injury. (Citations omitted) Other guidelines which a trial court should apply in its evaluation of guest cases include: (a) An error of judgment or a mistake standing alone, on the part of the host, will not amount to wanton or willful misconduct. (b) The host must have manifested an attitude adverse to the guest, or of perverseness, in that the host must have been shown he was indifferent to the consequences of his conduct. (c) The entire course of conduct of the host leading up to the accident must be considered. (d) The host must have had actual knowledge of danger confronting the guest.

*Keck v. Kerbs*, (1979) Ind.App., 395 N.E.2d 845, 848.

Lexie argues that the trial court erred in finding no evidence supporting a finding of wanton or willful misconduct. Lexie specifically points to the following facts as evidence of such conduct.

1. A previous accident occurring four or five years earlier.
2. The "probability" of injury due to:
 a) the lateness of the hour;
 b) Chaney's consumption of several drinks;
 c) Chaney having not slept since 4:00 a.m.;
 d) Lexie having fallen asleep.

 Lexie claims that the evidence shows an error of judgment or at least the inference of impaired judgment. However, an error of judgment, by itself, does not amount to wanton or willful misconduct. Although Chaney had been drinking, there was no evidence showing intoxication. Even if there had been evidence of intoxication, this, by itself, is usually not sufficient to show wanton or willful misconduct with-

in the meaning of the guest statute. *Keck v. Kerbs, supra* at 849.

 Chaney did have an incident four or five years previously, where he fell asleep at the wheel of the vehicle he was driving. However, this is also not supportive of Lexie's allegation of wanton or willful misconduct. The only conduct relevant to the court's determination is that conduct exhibited by Chaney on the night of the accident. There was no evidence of any abnormal behavior by Chaney either before or after the accident. There was no evidence of excessive speed or unusual driving maneuvers.

In addition, Lexie testified that Chaney exhibited a reckless indifference to the consequences and a perverse attitude sufficient to meet the requirements of the guest statute. Yet, Lexie had not made any complaints to Chaney concerning his driving prior to going to the tavern and had been asleep for the four hours immediately preceding the accident.

While none of these facts, standing alone, may constitute evidence of wanton or willful misconduct, Lexie seems to suggest that the sum of these facts is sufficient to at least allow the inference of wanton or willful misconduct. However, these facts, even when taken as a whole, do not indicate the requisite mental attitude for wanton and willful misconduct.

The circumstances of the case are simply that two friends, long after the workday ended, spent several hours at a local tavern for purely social reasons. Lexie, fell asleep and Chaney drove the truck as they left the Oolitic 66 Tavern on their way home. There is no evidence of any unreasonable driving behavior by Chaney. He momentarily dozed off to sleep which resulted in an accident causing permanent injury to Lexie. It is clear that these circumstances do not exhibit the required "premonitory" symptoms necessary to recover under the guest statute. *See, Brooks v. Bloom*, (1972) 151 Ind.App. 312, 279 N.E.2d 591. The trial court properly concluded that the "actions of defendant

Chaney, as a matter of law, did not amount to wanton or willful misconduct."

■■■ The last issue presented by Lexie is whether Chaney was acting within the scope of his employment so as to render C and H liable under a theory of respondeat superior. Lexie's theory of liability with respect to C and H is that liability on the part of Chaney, individually as the driver, can be imputed to his employer because Chaney was acting within the scope of his employment.

Because the trial court properly determined that the Indiana Guest Statute is applicable to this case and that there is no evidence supporting a finding of wanton or willful misconduct on the part of Chaney, there can be no recovery by Lexie against Chaney individually. Thus, the argument that C and H could be held liable under a theory of respondeat superior is rendered moot. C and H could be held liable only if Chaney was found to be liable individually.

Judgment affirmed.

NEAL, P.J., concurs.

RATLIFF, J., concurs in part and dissents in part with opinion.

RATLIFF, Judge, dissenting in part and concurring in part.

I dissent from that portion of the majority opinion holding there is no genuine issue of fact whether Chaney was guilty of wanton· and willful misconduct in driving the truck. In taking this position, I am fully cognizant of cases in this jurisdiction which clearly establish that driving while intoxicated alone is insufficient to prove wanton and willful misconduct under the Indiana Guest Statute. *Andert v. Fuchs*, (1979) 271 Ind. 627, 394 N.E.2d 931; *Keck v. Kerbs*, (1979) Ind.App., 395 N.E.2d 845; *Sharp v. Egler*, (7th Cir.1981) 658 F.2d 480; *Oliver v. Estate of Clemons*, (1968) 142 Ind.App. 499, 236 N.E.2d 72, *trans. denied.* Absent express statutory language making the intoxication of the driver a ground of liability to a gratuitous guest, courts generally have held that intoxication alone is not sufficient to render the driver liable to a

guest on grounds of willful or wanton misconduct. 7A Am.Jur.2d *Automobiles and Highway Traffic* § 581 (1980). In my view, it is time this rule was changed, and the courts of this state should not be reluctant to change it. The rule was devised by judicial decision and can be changed by judicial decision.

According to our supreme court, the underlying basis of wanton and willful misconduct under our guest statute is that the driver "conscious of his conduct and with knowledge of existing conditions that injury would probably result, and with reckless indifference to the consequences, ... consciously and intentionally did some wrongful act or omitted some duty which produced the injuries." *Bedwell v. DeBolt*, (1943) 221 Ind. 600, 607, 50 N.E.2d 875, 878. That court also has stated that "to constitute 'willful or wanton misconduct' there must be a 'perverse motive,' in that the misconduct must be conscious and intentional and of such a nature that under the known existing conditions injury will probably result therefrom." *Sausaman v. Leininger*, (1957) 237 Ind. 508, 514, 146 N.E.2d 414, 418.

Here, the evidence before the court indicated that Chaney and Lexie Roberts played poker from 3:30 p.m. to 5:15 p.m. and had one or two beers and some whiskey. They then went to the Oolitic 66 Tavern, arriving about 7:30 p.m. Sometime between 9:00 p.m. and 12:30 a.m., Lexie left the tavern and went to the truck where he fell asleep. Chaney remained in the tavern until 12:30 a.m. Chaney was drinking in the tavern during this time. As he drove the truck from Oolitic enroute to Springville, Chaney fell asleep and the truck left the pavement whereupon the accident which resulted in Lexie's injuries occurred. This evidence clearly raises a genuine issue of fact of whether Chaney was intoxicated and whether his intoxication caused him to fall asleep, drive off the road, and resulted in Lexie's injuries.

Driving while intoxicated is a wrongful act and was at the time herein involved.

IND.CODE § 9–4–1–54 (a class A misdemeanor, or a class D felony if it resulted in the death of another person).[1]

Becoming intoxicated ordinarily is the result of the conscious and intentional act of the drinker. There is no claim made here that Chaney drank intoxicants against his will or that drinks were poured down his throat by ruffians, or that he drank the intoxicants under any duress or coercion. Further, driving a motor vehicle is not an involuntary act. On the contrary, it is an act performed deliberately and intentionally by the driver. That driving a motor vehicle while intoxicated is, in addition to unlawful, an act which probably will produce injury should be well known to anyone who reads newspapers or listens to television or radio news accounts of the carnage on our highways caused by drunken drivers. Driving while intoxicated clearly is an act done with reckless indifference to the consequences and is indicative of the perverse motive described by our supreme court in *Sausaman*. In fact, our supreme court quite recently stated "it is readily apparent to this Court that the operation of an automobile while intoxicated endangers the physical well-being of every occupant of the highway; ..." *In the Matter of Bruce Jones*, 464 N.E.2d 1281, 1282 (Ind. 1984).

The hazard to the public posed by drunk drivers was pointed out by the Supreme Court of New Mexico in *Lopez v. Maez*, (1982) 98 N.M. 625, 651 P.2d 1269, 1276, at

footnote 7, wherein it cited 1980 statistics from The National Safety Council showing that approximately half of all auto fatalities are the result of drunk driving; that more Americans are killed each year as the result of drunk driving than from any other accident; and that in 1980, approximately 26,300 persons were killed in the United States in drunk driving accidents. We cited these data in our opinion in *Elsperman v. Plump*, (1983) Ind.App., 446 N.E.2d 1027, 1030.[2]

Driving a motor vehicle while intoxicated thereby endangering one's guest rider is wanton and willful misconduct *per se* and it is high time we said so.

I am not at all deterred by the fact that our guest statute, except for certain named family members and hitchhikers, has been repealed as of September 1, 1984. There remain those unfortunate individuals who may be without a remedy if injured by intoxicated host drivers if we do not declare driving while intoxicated *per se* wanton and willful misconduct.

On this one issue I dissent. Otherwise, I concur in the majority opinion.

1. Since repealed and replaced by IND.CODE § 9–11–1–1 *et seq.* Under present law, driving while intoxicated is a class A misdemeanor, IND.CODE 9–11–2–2; a class D felony if the driver has a previous conviction thereof within five years, IND.CODE 9–11–2–3, or if serious bodily injury results to another person, IND.CODE 9–11–2–4, and is a class C felony if it results in the death of another person, IND.CODE 9–11–2–5.

2. At the very time this opinion is written, the Congress of the United States is engaged in enacting legislation which will reduce highway fund distributions to states which do not raise their legal drinking age to 21. This legislation was adopted by the Senate on June 26, 1984, by the overwhelming vote of 81–16, and has the full support of the President. *The Indianapolis News*, June 27, 1984. The primary purpose of this legislation is to reduce drunken driving by teen-agers and the injuries, death, and destruction resulting therefrom.

The highly publicized efforts of such groups as Mothers Against Drunk Drivers (MADD) stand as further evidence of public outrage over the dangers posed to the public by drunk drivers. No clear minded person can be unaware of the fact that drunk driving is a clear and present threat to the safety of the general public, and that a person who drives a motor vehicle while intoxicated does so with a reckless indifference to the consequences. Such drivers should be held to know the serious risk of injury posed by their conduct to the public generally and especially to those persons riding with them.